DANIELSON and others, Appellants, vs. INDUSTRIAL COM-
MISSION and another, Respondents.

*May 6—June 3, 1958.*

368

370

372

For the appellants there was a brief by *Max Raskin,* attorney, and *Philip L. Padden* of counsel, both of Milwaukee, and oral argument by *Mr. Raskin.*

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer* of Madison.

For the respondent Electric Auto-Lite Company there was a brief and oral argument by *H. W. Goranson* of Toledo, Ohio.

FAIRCHILD, J. The legal issues presented on this appeal differ in some respects from those presented in the companion case, ante, p. 345. One such difference, although we do not view it as controlling, is that in 1956 sec. 108.05 (4) (b), Stats., was in force. It provides as follows:

"(b) An employee's vacation pay shall, for benefit purposes, be treated as wages for a given week only if it has by the close of that week become definitely allocated and payable to the employee for that week and he has had due notice of such allocation; provided that, in any case where an employee's vacation pay has not been thus allocated to a given week, his employer may:

"1. Allocate it to a future week of the employee's unemployment, with due notice to him and to the commission; or

"2. Deduct from such pay, without penalty under section 108.24, such benefits paid for a past week as the employee would not have received if such pay had been currently allocated to such week, in which event the employer shall promptly transmit the amount thus deducted to the commission for his account in the fund and the commission shall correct the employee's benefit credits accordingly."

This section was included in Bill No. 64, S., which became ch. 527, Laws of 1955. The bill was recommended by the advisory committee appointed under the Unemployment Compensation Act and a note explaining the foregoing provision read as follows:

"In most cases an employee's vacation pay is clearly allocated to a specific week, in advance; so he knows that it's wages for that week and will be so treated for benefit purposes.

"In some cases, however, an employee is unemployed before he has any vacation pay coming; or he doesn't know to what weeks his vacation pay will later be allocated. In such 'iffy' or uncertain cases, such possible pay must be ignored for benefit purposes, in order to handle claims and payments promptly.

"In such a case, if the employee later receives vacation pay which hasn't been promptly allocated to a current week of actual vacation or unemployment the employer may apply

such pay to a future week of unemployment or may withhold from it benefits for a past week, as specified above."

As suggested in our opinion in the companion case, we view the quoted provision as a clarification of the procedure which an employer is to follow in allocating vacation pay to certain weeks which would otherwise be weeks of unemployment. We do not view this provision as giving the employer a right to allocate vacation pay to certain periods if his right to specify the time for vacations is limited by contract.

As pointed out in our opinion in the companion case, Auto-Lite had normally set a "vacation period" of several months' duration in which individual choices of vacations were accepted as a matter of course unless production was interfered with by a concentration of selections. Conceivably the plaintiffs might have questioned the right of the company under the terms of the vacation provisions of the contract to constrict the vacation period designated by the company to two weeks. Such constriction of the period did, however, serve the convenience of the company since it permitted a virtually complete shutdown for two weeks evidently at a time when orders for the plant's production for 1956 models of automobiles had been fulfilled and orders for 1957 models were not yet forthcoming. In any event, plaintiffs have not raised that question; it appears that the local union, through its bargaining committee, discussed the shutdown plan over a number of months with representatives of management; and there is a suggestion in the record that the company's right to shut down for two weeks for vacations may have been considered in negotiations at a national level. Because of all these circumstances, we have not given consideration to this particular question.

Plaintiffs urge that the provision of the local agreement at La Crosse prohibiting alteration of past practices in the absence of mutual agreement required the company to permit plaintiffs to designate periods of leave of absence as their

vacations notwithstanding the company's designation of the specific week 28.

It is apparently undisputed that in prior years the practice at La Crosse would have been to permit employees who were absent on leave for personal reasons at any time during the year to forego an absence for vacation purposes and to apply their vacation time to the leave which they took either before or after the vacation period designated by the company.

Assuming, however, that this practice of permitting allocation of vacation to leave of absence at the employee's option was the type of past practice contemplated by the local agreement, it nevertheless seems clear that it was in conflict with the designation of a period of shutdown as the time for taking vacations. This latter decision was made at the home office of Auto-Lite and its propriety, as previously noted, has not been challenged. Thus an employee, like plaintiff Chapman who took a period of leave in February and did not prior to the determination by the company that weeks 28 and 29 were the convenient time for vacations, request that her February week of leave be considered as part of her vacation, cannot rely upon local past practice to defeat the policy determined by the company in the exercise of its rights under the national agreement. Similarly an employee like plaintiff Lind who preferred to be away from work for vacation during different weeks from the ones designated by the company could not rely upon past practice to compel the company to grant those weeks as vacation at a time later than the weeks determined as a convenient time by the company.

By determining to shut down the plant during two weeks in July, the company as pointed out by the circuit court, made those two weeks unquestionably the most convenient time for employees' vacations from the company's point of view. Unless this action was improper under its contract, the company had the right to insist that all vacation time be taken during the period of shutdown.

The situation of plaintiff Keller is somewhat different. The company originally decided upon a shutdown of two weeks, and as has been stated, thus made those two weeks a convenient time for vacations. Because of an agreement between the management and the local union, week 3, in which there had been a strike, was designated as a vacation week and the company designated the other week as week 28. It did, however, continue with its shutdown during week 29 and since plaintiff Keller, for reasons of personal advantage, prefers his vacation during week 29, the company cannot say that week 29 is any less a convenient time than week 28. For reasons similar to those set forth in our opinion in the companion case, we consider that the company's convenience being equal, plaintiff Keller had the right to choose and therefore benefits for week 28 should not have been denied.

In the case of employee Olson, not here on appeal, the commission apparently found that the company had granted a request of Olson that a week of leave in February be considered a vacation week. In the case of plaintiff Danielson, the appeal tribunal did not make the finding whether the employer granted or denied plaintiff's request that a week of leave of absence from April 30th to May 7th be treated as vacation. The appeal tribunal did find, however, that about two weeks prior to the end of April, Danielson had requested the leave and requested that he receive his vacation pay at that time and that those requests were granted. Even though the appeal tribunal found that Danielson then knew that the company had indicated that weeks 28 and 29 would be the vacation period, we consider that the evidence required a finding that Danielson's week of leave in early May did constitute a vacation week. This is true because he timely requested vacation pay and the company paid it to him at that time. Accordingly, his claim for benefits for week 28 should not have been denied.

*By the Court.*—As to plaintiffs Lind and Chapman the judgment is affirmed; as to plaintiffs Danielson and Keller the judgment is reversed, and the cause remanded with instructions to enter judgment setting aside the decision of the commission and remanding the record for further proceedings.

CURRIE, J. (*dissenting in part*). I dissent from the majority opinion only with respect to allowance of the claim for benefits of the plaintiff Keller.

On July 6th he, as well as the other employees, was notified that week 28 was to be the other vacation week in addition to week 3. The company under the contract clearly had the right to do this, and vacation pay checks were issued on this basis. This was binding on Keller as well as all other employees who had not previously, with company approval, designated a different vacation period.

I am authorized to state that Mr. Justice BROADFOOT concurs in this dissent.