General Drivers & Helpers Union, Local 662, Appellant, v. Wisconsin Employment Relations Board and another, Respondents.

*October 3—October 29, 1963.*

For the appellant there were briefs by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *David L. Uelmen.*

For the respondent Wisconsin Employment Relations Board the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the briefs was *George Thompson,* attorney general.

For the respondent Rice Lake Creamery Company there was a brief by *Robertson, Hoebreckx & Davis* of Milwaukee, and oral argument by *O. S. Hoebreckx.*

GORDON, J.   The union contends that the employer committed an unfair labor practice in violating the terms of a collective-bargaining agreement by refusing to make vacation payments which it claims were vested rights under the contract.  The employer disagrees and urges that the contract had expired at the time of the alleged unfair labor practice and that the matter of the vacation benefits had never been a matter of dispute between the union and the employer until after the termination of the employment contract.  The employer also contends that the Wisconsin Employment Relations Board does not have jurisdiction to make an order directing the payment of money under these circumstances.

I. *Jurisdiction of the W.E.R.B.*

In an analytical decision, the trial court concluded that the W.E.R.B. did not have jurisdiction after the termination of

the contract to order the payment of money as a corrective measure under the facts of the case at bar. The attorney general, while supporting the judgment of the trial court, disagrees with the basis upon which the trial court reached its conclusion.

Neither the statutes nor the decisions of this court expressly resolve the policy problem with which we are confronted in this case. That policy problem relates to the jurisdiction of the W.E.R.B., as an administrative tribunal, to determine the union's demand for an order to pay money in connection with an alleged unfair labor practice arising by reason of a claimed breach of an expired employment contract. Sec. 111.07 (1), Stats., authorizes the board to hear controversies concerning unfair labor practices but adds, ". . . nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction." Sec. 111.17 provides that "Wherever the application of the provisions of other statutes or laws conflict with the application of the provisions of this subchapter, this subchapter shall prevail, . . ." Further, sec. 111.07 (4) provides as follows:

"Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend his rights, immunities, privileges or remedies granted or afforded by this subchapter for not more than one year, and require him to take such affirmative action, including reinstatement of employes with or without pay, as the board may deem proper."

The board itself has taken the position that it has jurisdiction to determine that a violation of the vacation-pay provisions is a proper subject for its determination and order. *Flambeau Local No. 261 v. Peavey Paper Mills, Inc.,* W.E.R.B. decision No. 6477, dated September 3, 1963. This court has previously heeded an administrative agency's practical construction of the statute under which it is au-

thorized to act. *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 326, 64 N. W. (2d) 866. However, the argument does not have nearly so much weight when the agency's construction is of recent origin. Cf. *Smith v. Department of Taxation* (1953), 264 Wis. 389, 392, 59 N. W. (2d) 479. But see *State ex rel. Irany v. Milwaukee County Civil Service Comm.* (1962), 18 Wis. (2d) 132, 118 N. W. (2d) 137.

This court has passed upon cases in which the board has exercised jurisdiction to order the employer to pay money to designated employees. *E.g., Wisconsin E. R. Board v. Gateway Glass Co.* (1953), 265 Wis. 114, 60 N. W. (2d) 768. We recognize that in such cases the alleged unfair labor practice involved a contract which was still in force.

This court is of the opinion that the legislature intended the W.E.R.B. to have the power to make orders for the payment of money notwithstanding the fact that the claimed unfair labor practice arose after the termination of the contract which was allegedly violated.

There are numerous reasons which have helped us reach this decision. The preamble to ch. 111, Stats., provides that the public policy of the state is the furtherance of "industrial peace, regular and adequate income for the employe, and uninterrupted production of goods and services." See *International Union v. Wisconsin E. R. Board* (1951), 258 Wis. 481, 493, 46 N. W. (2d) 185. In *Appleton Chair Corp. v. United Brotherhood* (1941), 239 Wis. 337, 343, 1 N. W. (2d) 188, this court observed that the legislature deals with labor disputes "not primarily as a method of enforcing private rights, but to enforce the public right as well."

In *Consolidated Edison Co. v. National L. R. Board* (1938), 305 U. S. 197, 236, 59 Sup. Ct. 206, 83 L. Ed. 126, the court said that the function of the administrative agency designated to deal with unfair labor practice is "removing or

avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act." See *Wisconsin E. R. Board v. Algoma Plywood & Veneer Co.* (1948), 252 Wis. 549, 560, 32 N. W. (2d) 417.

Although the contract had ended, there was not a complete severance of the continuing relationship between the employer and those employees who were involved in this dispute. It is unrealistic to suggest that industrial peace is not involved when the respondent, Rice Lake Creamery Company, has dealings with its 25 production and maintenance employees—regardless whether such negotiations preceded or followed the termination of a formal union contract.

We consider that the recognized prerogative of the board to issue cease and desist orders has at least as high a status as the issuance of an order to pay money. We find it difficult to believe that it can be held proper to delegate the function of issuing injunctions governing personal conduct but that it is not proper to issue orders to pay money. Thus, we find no violation under sec. 2, art. VII of the Wisconsin constitution which vests judicial power in the courts. In examining the Workmen's Compensation Law in 1911, the court passed on this argument:

"The next important contention is that the law is unconstitutional because it vests judicial power in a body which is not a court and is not composed of men elected by the people, in violation of those clauses of the state constitution which vest the judicial power in certain courts and provide for the election of judges by the people, as well as in violation of the constitutional guaranties of due process of law. . . . We do not consider the Industrial Commission a court, nor do we construe the act as vesting in the Commission judicial powers within the meaning of the constitution. It is an administrative body or arm of the government which in the course of its administration of a law is empowered to ascertain some questions of fact and apply the existing law thereto, and in so doing acts *quasi*-judicially,

but it is not thereby vested with judicial power in the constitutional sense.

"

"While acting within the scope of its duty, or its jurisdiction, as it is sometimes called, such a board may lawfully be endowed with very broad powers, and its conclusions may be given great dignity and force, so that courts may not reverse them unless the proof be clear and satisfactory that they are wrong." *Borgnis v. Falk Co.* (1911), 147 Wis. 327, 358, 359, 133 N. W. 209.

We are not here required to resolve the question whether the individual employees involved would also be free to pursue relief in the courts under sec. 111.07 (1), Stats. See *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 82 N. W. (2d) 172; sec. 103.39 (4). In any event, the existence or nonexistence of the right of individuals to sue in the courts does not preclude the W.E.R.B. from taking such affirmative action as it believes is necessary to effectuate the policies of the act.

The union as a party to the contract which was allegedly breached is the statutory representative of the employees and therefore a party in interest, as that term is used in sec. 111.07 (2) (a), Stats. Cf. *National L. R. Board v. Borg-Warner Corp.* (1958), 356 U. S. 342, 350, 78 Sup. Ct. 718, 2 L. Ed. (2d) 823.

The respondent, Rice Lake Creamery Company, further challenges the jurisdiction of the board on the grounds that sec. 5, art. I of the Wisconsin constitution guarantees the parties to the contract the right to a jury trial. We have already noted that the breach of an employment contract may jeopardize employment peace, which in turn disturbs the public interest; we are not dealing with a mere action to recover money damages. The legislature had the power to permit the W.E.R.B. to hold hearings and take affirmative action, and this does not violate sec. 5, art. I. An unfair

labor practice proceeding is in the nature of an equitable proceeding, and a money award is a proper incident to equitable relief. There would be no constitutional distinction between an order for vacation pay and an order for reinstatement of employment with an award of back pay.

The respondent's argument that it is being deprived of the right to a trial by jury also fails for the reason that the right which is constitutionally protected is the right which existed under the common law at the time our constitution came into being. Note, Legislative Control of Trial by Jury, 1951 Wisconsin Law Review, 370. Since unfair labor practice litigation described in ch. 111, Stats., was not in existence at the time that the Wisconsin constitution came into being, there is no constitutional obligation to afford a jury trial in such proceedings. A comparable finding was made by the United States supreme court in *National L. R. Board v. Jones & Laughlin Steel Corp.* (1937), 301 U. S. 1, 48, 57 Sup. Ct. 615, 81 L. Ed. 893. There it was held that the Seventh amendment to the United States constitution, which preserves the right of trial by jury, did not apply to an N.L.R.B. award of back wages. Mr. Chief Justice HUGHES stated:

"The Amendment thus preserves the right which existed under the common law when the Amendment was adopted. . . . Thus it has no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law. . . . It does not apply where the proceeding is not in the nature of a suit at common law."

Finally, it should be pointed out that the respondent, Rice Lake Creamery Company, errs when in its brief it challenges the board's authority to enter a "judgment" for money damages. An order of the board does not become a judgment until so ordered by the circuit court. Sec. 111.07 (7), Stats.

## II. *The Contractual Obligation for Vacation Pay.*

This court has held that the right to vacation pay may survive the life of the contract which created it. *Valeo v. J. I. Case Co.* (1963), 18 Wis. (2d) 578, 119 N. W. (2d) 384. See *Oglebay Norton Co. v. Industrial Comm.* (1962), 15 Wis. (2d) 396, 410, 113 N. W. (2d) 35. The trial judge recognized that the *Valeo Case* probably resolves the issue when he said:

"The dissenting opinion of Chairman Slavney deals extensively and perceptively with the question of whether or not it was the 'intention of the parties to recognize the concept of earned vacations.' In view of the recent decision in *Anthony Valeo vs. J. I. Case Co.* (No. 99, Aug. term, 1962, Feb. 5, 1963) it would appear that Commissioner Slavney's analysis as to the contract provisions indicating an intention of the parties to recognize the concept of earned vacations is probably correct."

Upon the facts of the instant case, the right to vacation pay was vested, and the board should have ordered that it be paid by the respondent, Rice Lake Creamery Company. In our opinion, the matter is governed by the *Valeo Case*.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.