SCHOOL DISTRICT OF DRUMMOND, Petitioner-Respondent, and Cross-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Appellant and Cross-Respondent,

SCHOOL DISTRICT OF DRUMMOND EMPLOYEE'S ASSOCIATION, Co-Appellant and Cross-Respondent.†

Court of Appeals

*No. 83–1696. Submitted on briefs April 2, 1984.—*
*Decided June 5, 1984.*
(Also reported in 352 N.W.2d 662.)

† Petition to review granted.

For the appellant Wisconsin Employment Relations Commission the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general.

For the co-appellant and cross-respondent School District of Drummond Employee's Association the cause was submitted on the briefs of *Michael L. Stoll,* staff counsel, and *Gordon E. McQuillen,* attorney, Wisconsin Education Association Council.

For the cross-appellant School District of Drummond the cause was submitted on the briefs of *Clark & Clark* and *Dale R. Clark* of Ashland.

For the cross-respondent Wisconsin Employment Relations Commission the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general.

For the respondent School District of Drummond the cause was submitted on the brief of *Clark & Clark* and *Dale R. Clark* of Ashland.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. The Wisconsin Employment Relations Commission (commission) and the School District of

Drummond Employee's Association (association) appeal the circuit court's judgment setting aside the commission's order concerning the School District of Drummond's (district) nepotism policy. The commission's order required the district to bargain collectively with the association concerning its decision to adopt the policy and the decision's impact on employees, to cease terminating under the policy any district employees represented by the association, and to rehire Eldon Kravick and compensate him for any loss he suffered as a result of being terminated under the policy. The district cross-appeals that part of the judgment requiring it to bargain the effects of the policy on Kravick's employment. Because the commission had a rational basis for interpreting sec. 111.70, Stats., to require collective bargaining concerning the district's decision to adopt and implement its nepotism policy, we reverse the judgment and remand the cause to the trial court with directions to reinstate and affirm the commission's order. Our decision makes it unnecessary to consider the district's cross-appeal.[1]

The district's school board adopted a "nepotism policy" that barred the district from hiring a spouse or child of any board member under a contract providing for more than $5,000 annual compensation. It also prevented rehiring employees upon expiration of existing contracts if their spouse or parent was a member of the board when the resolution was adopted or subsequently became a member.[2] At the time the resolution was adopted, Eldon Kravick was a school bus driver for the district earning

---

[1] We note that reinstating the commission's order has the effect of requiring the district to bargain the impact of the nepotism policy on any employees represented by the association, including Kravick, whom the district must rehire.

[2] The resolution adopting the policy reads:

WHEREAS, it is the general policy of the State of Wisconsin that public officials shall have a complete personal disinterest in public contracts; and

more than $5,000 a year. His wife, Shirley Kravick, was a school board member. Since Shirley remained on the board when Eldon's contract expired, Eldon was not rehired. Both before and after the school board adopted

WHEREAS, criminal statutes of the State of Wisconsin prohibit a school board member, in his private capacity, from negotiating or bidding for or entering into a contract which he has participated in making as a public official, and prohibit a school board member from participating in the making of such contract in his public capacity of performing some discretionary function in regard to the contract; and

WHEREAS, responsibilities and duties of the board of education are comprised, to an increasingly large degree, of negotiating and entering into and executing employment contracts with school district employees; and

WHEREAS, it is, to a like and increasing degree, more difficult for the active and conscientious school board member, in his private capacity, to remain sufficiently aloof from participating in the making, formation, and execution of such public contract so as not to violate such criminal statutes; and

WHEREAS, the Board of Education of the School District of Drummond is acutely aware of the need to restore the confidence, faith and trust of the citizenry in the integrity of the manner of functioning of governmental bodies at all levels,

NOW, THEREFORE, BE IT RESOLVED by the board of the School District of Drummond that it henceforth will not enter into any employment contract with a spouse or child of any board member if such contract provides for an annual compensation in excess of $5,000; that any individual employment contract between the board and husband, wife, or child of a member of the board entered into prior to the date of this resolution and currently in effect shall be performed to the completion of its term and it shall then terminate and be at an end; that the husband, wife, or child of any current member of the board, performing services for the district at an annual compensation in excess of $5,000 pursuant to an arrangement other than an individual employment contract, shall resign forthwith; and that any person, hereafter performing services for the district at an annual compensation in excess of $5,000 pursuant to an arrangement other than an individual employment contract, whose husband, wife, or parent is hereafter elected to serve on the board, shall end such performance of the services immediately when his or her husband, wife, or parent assumes the office of board member.

the policy, the association, which was the collective bargaining unit representing Eldon, demanded that the district engage in collective bargaining before adopting or implementing the policy. The district refused, arguing that the nepotism policy was strictly a matter of public policy and not a subject for mandatory collective bargaining.

The association filed a complaint with the commission alleging the district committed prohibited practices within the meaning of sec. 111.70, Stats., of the Municipal Employment Relations Act (MERA). The commission appointed an examiner who made findings and concluded that the district committed a prohibited practice within the meaning of sec. 111.70(3)(a)4[3] by refusing to bargain the decision to adopt the nepotism policy, and that the district committed a prohibited practice within the meaning of sec. 111.70(3)(a)5[4] by refusing to rehire Eldon Kravick. The examiner ordered the district to bargain with the association concerning the adoption and implementation of the policy, to rehire Kravick pending the outcome of bargaining, and to compensate Kravick for his loss due to the termination. The district appealed to the commission, which affirmed its examiner's decision. The district sought judicial review, and

[3] Section 111.70(3)(a)4, Stats., provides in part that it is a prohibited practice for a municipal employer to refuse to bargain collectively with a representative of a majority of its employees. Section 111.70(1)(d), Stats., defines collective bargaining as:

"the performance of the mutual obligation of a municipal employer . . . and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment . . . with the intention of reaching an agreement . . . . The duty to bargain, however, does not compel either party to agree to a proposal or require the making of a concession . . . ."

[4] Section 111.70(3)(a)5, Stats., provides in part that it is a prohibited practice for a municipal employer to violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours, and conditions of employment affecting municipal employees.

the circuit court set aside the commission's order, requiring the district only to bargain the effects of its policy on Eldon Kravick's employment.

## STANDARD OF REVIEW

When the legislature designates an administrative agency to apply a particular statute, the agency's interpretation is entitled to great weight and a reviewing court must defer to the interpretation unless it is irrational. *Arrowhead United Teachers Organization v. Wisconsin Employment Relations Commission,* 116 Wis. 2d 580, 593, 342 N.W.2d 709, 716 (1984). The rational basis standard applies only when the agency's interpretation reflects a long-continued, substantially uniform, and unchallenged practice or position. If the question is one of first impression, the agency's interpretation is entitled only to due weight. *Id.* at 594, 342 N.W.2d 716. Whether the question is one of first impression depends not on whether the agency has previously dealt with the specific type of situation involved, but rather on whether the agency has developed expertise through similar general determinations about the application of MERA. *See id.*

The commission's interpretation of sec. 111.70 must be affirmed if it can be supported by any rational basis. In *Arrowhead,* the commission's interpretation involved whether student interns and professional teachers shared a community of interest sufficient to place them in the same bargaining unit under sec. 111.70(4)(d)2.a, Stats. The supreme court noted that the commission had never decided the question with respect to students and professionals, but applied the rational basis standard because the community of interest concept reflected a longstanding commission practice in determining appropriate bargaining units under MERA. *Arrowhead,* 116 Wis. 2d at 594, 342 N.W.2d at 716. In this case,

although the commission has not previously decided whether adoption and enforcement of a nepotism policy is a mandatory subject for collective bargaining, it has gained substantial experience over many years of applying the "primary relation" concept to determine whether an employer's actions or contract proposals are mandatory or permissive subjects for collective bargaining under MERA. *See Blackhawk Teachers' Federation v. WERC,* 109 Wis. 2d 415, 423, 326 N.W.2d 247, 252 (Ct. App. 1982). The commission's rulings interpreting the scope of collective bargaining under MERA constitute a longstanding, uniform, and unchallenged practice. *Id.*

The district argues that *Arrowhead* does not control the standard of review in this case because *Arrowhead* involved "questions of law and fact," and because it was limited to sec. 111.70(4)(d). We disagree. The supreme court in *Arrowhead* applied the rational basis standard at two steps in the review. The first step was the review of the commission's interpretation of the statute, a question of law. The second step was the review of the commission's departure from its prior practice, a question that depended on the specific facts the commission relied on. *See Arrowhead,* 116 Wis. 2d at 594–96, 342 N.W.2d at 716–17. We are not presented with a departure from previous commission practice,[5] only with its interpretation of a statute. That the specific facts in *Arrowhead* were necessary to review the commission's departure from prior practice does not affect the analysis set forth in *Arrowhead* for reviewing the commission's interpretation of a statute. In addition,

---

[5] The district's argument that the commission deviated from its prior practice of applying the "primarily related" test is without merit. The commission's Enlarged Conclusions of Law plainly stated that "the nepotism policy adopted by the Board . . . primarily relates to wages, hours and conditions of employment . . . ."

we find nothing to support the district's claim that the standard set forth in *Arrowhead* for reviewing an agency's statutory interpretations is limited to sec. 111.70 (4) (d) and would not apply to other MERA determinations. The standard of review analysis in *Arrowhead* supports our previous decision in *Blackhawk* to apply the rational basis standard to the commission's interpretations of whether subjects of collective bargaining are mandatory or permissive.

## REVIEW OF THE COMMISSION'S DETERMINATION

■■■ The commission correctly concluded that secs. 111.70 (1) (d) and 111.70 (3) made the district's decision to adopt and implement a nepotism policy a mandatory collective bargaining subject because the decision was primarily related to wages, hours, and conditions of employment. A proposal primarily related to wages, hours, and working conditions is a mandatory subject of bargaining, while a proposal that relates to educational policy and school management is a permissive subject concerning which the district has no duty to bargain. *Blackhawk,* 109 Wis. 2d at 424, 326 N.W.2d at 252. Even though we, as a reviewing court, might interpret or apply a statute differently from the commission in this case, we must defer to the commission if a rational basis exists for its conclusion. Although the nepotism policy involved public policy considerations, the commission's determination that it was primarily related to conditions of employment had a rational basis. The commission could reasonably conclude that the policy's direct effect on employment conditions outweighed the policy's effect in furthering the district's public policy considerations. It is difficult to measure to what extent the policy's objectives of avoiding conflicts of interest and restoring citizen confidence and trust in govern-

ment are furthered by its prohibition on the spouse or child (but not the parent or sibling) of a school board member being employed by the district. On the other hand, the policy's effect on the job security, a condition of employment, of a district employee whose spouse or parent is or will serve on the school board is direct and severe.

We reject the district's argument that its decision to adopt and implement the nepotism policy was a prohibited subject of collective bargaining. Section 946.13 did not require the district to adopt a nepotism policy, and there is nothing in that section or sec. 120.12 (1), Stats., that precludes the district from bargaining the adoption and implementation of its nepotism policy. These statutes are not in conflict with sec. 111.70's requirment that the municipal employer bargain with respect to conditions of employment.

## PROPRIETY OF THE COMMISSION'S ORDER

The commission's remedial order should be reinstated in full. Having determined that the adoption and implementation of the district's nepotism policy was a mandatory subject of collective bargaining, the commission concluded that the district's failure to bargain was a prohibited practice under sec. 111.70 (3) (a) 4 and that its termination of Kravick's employment without cause was a prohibited practice under sec. 111.70 (3) (a) 5. To remedy the situation, the commission ordered the district to bargain, to restore Kravick to his position pending bargaining, and to compensate Kravick for his loss resulting from the wrongful termination. The remedy is within the commission's powers. *See* secs. 111.70 (4) (a), 111.07 (4), Stats. The commission is empowered to order parties to cease and desist or to take affirmative action the commission believes is necessary or proper to

effectuate the policies of the labor relations statute. *See WERC v. City of Evansville,* 69 Wis. 2d 140, 158–59, 230 N.W.2d 688, 699 (1975) ; *General Drivers & Helpers Union, Local 662 v. WERC,* 21 Wis. 2d 242, 251, 124 N.W.2d 123, 128 (1963).

The district also argues that the commission's order requiring it to bargain the policy's impact only requires it to bargain the actual impact on Kravick, because he is the only employee affected at this time. The commission stated in its memorandum that the duty to bargain concerning impact "exists regardless of any present impact upon any current bargaining unit employe," and that the potential impact triggers the duty to bargain. We agree with the commission.

Both the employer's proposal and the effect or impact of that proposal on the employee's wages, hours, and conditions of employment are subjects for bargaining. *See Blackhawk,* 109 Wis. 2d at 429–30, 326 N.W.2d at 255; sec. 111.70 (1) (d), Stats. In bargaining the former, the parties confer about whether the proposal should be adopted and what it should say. In bargaining the latter, they discuss the manner of applying the policy adopted or exercising the function involved. *Blackhawk,* 109 Wis. 2d at 429–30, 326 N.W.2d at 255.

In this case, after adopting a specific nepotism policy, the district is required to bargain concerning the policy's application to employees generally. It would be anomalous to require the district to bargain about such things as whether it would, for example, allow Kravick to switch to parttime employment and/or take a pay cut to avoid termination under the policy, while allowing different treatment of an employee whose spouse is elected to the school board two months later. Applying the nepotism policy to employees in such a manner would likely create future labor disputes and would be contrary to the policies of MERA. *See* sec. 111.70 (6), Stats.

*By the Court.*—Judgment reversed and cause remanded with directions. Costs to appellant.

FOLEY, P.J. (dissenting).  I would affirm the judgment.  I can think of no rational basis for the commission's conclusion that the school board's nepotism policy is primarily related to conditions of employment.  I therefore join the circuit court in concluding that the school board only had to bargain the impact of the policy.

The commission gave no supportable reasons for its conclusion.  I find no support for the commission's claim that any change that results in a termination of employment is mandatorily bargainable.  I also find no rational basis for the commission's comparison of a nepotism policy to a residency requirement.

In public employment, nepotism can diminish taxpayer respect and confidence.  It can also create conflicts of interest and morale problems among employees.  *See Whateley v. Leonia Board of Education,* 358 A.2d 826, 828 (N.J. Ch. 1976).  A residency requirement is not concerned with taxpayer respect or confidence or conflicts of interest.  The mere fact that the effect of a residency requirement and a nepotism policy may be the same as to one or more employees does not make them the same for all purposes.  In the case of a nepotism policy, the underlying purpose of the policy, rather than its effect, must control.

The persons properly responsible for deciding whether a nepotism policy is needed are the school board members, who are accountable to the public.  The proper place to make the decision is at the school board meeting, where discussion is open.  The commission's decision would instead improperly allow a special interest group, at the privacy of the bargaining table, to act as the exclusive representative of the public.  *See Unified School District No. 1 v. WERC,* 81 Wis. 2d 89, 99–100, 259 N.W.2d 724, 730–31 (1977).