SCHOOL DISTRICT OF DRUMMOND,
Petitioner-Respondent and Cross-Appellant-Petitioner,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Appellant and Cross-Respondent,

SCHOOL DISTRICT OF DRUMMOND EMPLOYEE'S
ASSOCIATION, Co-Appellant and Cross-Respondent.

Supreme Court

*No. 83–1696. Argued October 31, 1984.—*
*Decided November 27, 1984.*

(Also reported in 358 N.W.2d 285.)

For the petitioner-respondent and cross-appellant-petitioner there were briefs by *Dale R. Clark* and *Clark & Clark,* Ashland, and *Kathryn J. Prenn,* Cable, and oral argument by *Ms. Prenn.*

For the respondent-appellant and cross-respondent the cause was argued by *John D. Niemisto,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the co-appellant and cross-respondent there was a brief and oral argument by *Michael L. Stoll,* staff counsel, Wisconsin Education Association Council.

STEINMETZ, J.   The issue in this case is whether there is a rational basis for the conclusion of the Wisconsin Employment Relations Commission (commission)

that the adoption of an anti-nepotism policy of the School District of Drummond is a mandatory subject of bargaining. The issue concerns the scope of bargaining under the Municipal Employment Relations Act (MERA), secs. 111.70–111.77, Stats.

On May 23, 1979, the school board of the School District of Drummond (district) adopted a resolution which provided, *inter alia,* that the district would not employ the spouse of any board member. The policy was adopted by the board following public reaction across the district reflecting concern about conflicts of interest involving officials in the district.

When the School District of Drummond Employee's Association (association) learned that the board was contemplating the adoption of an anti-nepotism policy, the association's representative informed the school board that such policy potentially affected the wages, hours and conditions of employment of employees in the bargaining unit represented by the association, and demanded that the board negotiate the adoption of such policy. The board did not respond to the demand.

After the anti-nepotism resolution was adopted by the board, the association representative again demanded that the policy be rescinded until such time as the parties had an opportunity to bargain the impact of that policy. The board's response was that the entire matter was one of management policy and as such, was not subject to negotiation.

The association is the exclusive collective bargaining representative of the district's non-professional employees, including its school bus drivers. At the time of the adoption of the resolution, Eldon Kravick was employed by the district as a bus driver and had been for approximately eight years.

In April, 1979, the Drummond Board of Education voted to remove Kravick from the list of those bus drivers who were to be offered individual employment con-

tracts for the ensuing school year because of a "questionable conflict of interest" involving his employment with the district. On July 16, 1979, the district terminated Kravick's employment. For a portion of the period of Kravick's employment with the district, his wife, Shirley Kravick, served as an elected member of the district's board of education with her term on the board expiring in April, 1980.

Following Kravick's dismissal, the association representative filed a grievance on Kravick's behalf, protesting the board's action and demanding Kravick's reinstatement pending negotiations. The grievance was denied through all steps of the contractual grievance procedure.

The association filed a complaint with the Wisconsin Employment Relations Commission alleging that the district had committed a prohibited practice in violation of sec. 111.70(3)(a)4, Stats.,[1] by refusing to bargain with

---

[1] Sec. 111.70(3)(a)4, Stats., provides:

"(3) PROHIBITED PRACTICES AND THEIR PREVENTION. (a) It is a prohibited practice for a municipal employer individually or in concert with others:

". . . .

"4. To refuse to bargain collectively with a representative of a majority of its employes in an appropriate collective bargaining unit. Such refusal shall include action by the employer to issue or seek to obtain contracts, including those provided for by statute, with individuals in the collective bargaining unit while collective bargaining, mediation or fact-finding concerning the terms and conditions of a new collective bargaining agreement is in progress, unless such individual contracts contain express language providing that the contract is subject to amendment by a subsequent collective bargaining agreement. Where the employer has a good faith doubt as to whether a labor organization claiming the support of a majority of its employes in an appropriate bargaining unit does in fact have that support, it may file with the commission a petition requesting an election to that claim. An employer shall not be deemed to have refused to bargain until an election has been held and the results thereof certified to the employer by the commission. The violation shall include, though not be limited thereby, to the refusal to execute

the association over the anti-nepotism policy and the impact of that policy upon the wages, hours and conditions of employment of the employees represented by the association. The association amended its complaint to include an allegation that the district had also committed a prohibited practice in violation of sec. 111.70(3)(a)5,[2] by terminating the employment of Kravick pursuant to the anti-nepotism policy and contrary to the "just cause provision" in the 1978–1980 collective bargaining agreement between the association and the district.

A Wisconsin Employment Relations Commission examiner was appointed. He concluded that the district committed a prohibited practice within the meaning of sec. 111.70(3)(a)4, Stats., by unilaterally adopting and implementing an anti-nepotism policy without bargaining with the association despite the fact the decision to adopt the policy affected district employees. The examiner also held that the district committed a prohibited practice within the meaning of sec. 111.70(3)(a)5, by refusing to renew the employment contract of Kravick as a result of the implementation of the district's anti-nepotism policy.

The district filed a petition for review with the commission seeking a reversal of the order of the examiner and dismissal of the association's complaint. On June 15, 1982, the commission issued its decision, enlarging upon the examiner's findings of fact, conclusion of law and

a collective bargaining agreement previously agreed upon. The term of any collective bargaining agreement shall not exceed 3 years."

[2] Sec 111.70(3)(a)5, Stats., provides:

"5. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them."

order and affirmed the examiner's decision as so modified.

The commission concluded:

(1) The decision to adopt the anti-nepotism policy and the impact of the implementation of such a policy were mandatory subjects of collective bargaining within the meaning of MERA.

(2) The district, by unilaterally adopting and implementing its anti-nepotism policy with respect to the employment status of Kravick, without bargaining with the association, had committed a prohibited practice in violation of sec. 111.70 (3) (a) 4, Stats.

(3) The district, by refusing to grant Kravick a contract of employment for the 1979–80 school year and thereafter, terminated Kravick's employment for a reason other than "cause" in violation of the collective bargaining agreement between the district and the association, and thereby committed a prohibited practice within the meaning of sec. 111.70 (3) (a) 5, Stats.

The commission ordered the district to rescind its unilaterally adopted anti-nepotism policy, to bargain with the association with respect to any contemplated decision to adopt an anti-nepotism policy affecting any of the employees in the bargaining unit represented by the association, and to reinstate Kravick as a bus driver and to make him whole for any losses he suffered by reason of the district's prohibited practices.

On July 13, 1982, the district petitioned the circuit court of Bayfield county, the Honorable Douglas S. Moodie, to vacate the commission's order. The circuit court rejected the district's position that its anti-nepotism resolution was necessary to give local effect to sec. 946.13(1) (a) and (b), Stats.[3] The circuit court concluded

---

[3] Sec. 946.13(1)(a) and (b), Stats., provides:

"**946.13 Private interest in public contract prohibited.** (1) Any public officer or public employe who does any of the following is guilty of a Class E felony:

that the impact of the resolution on Kravick's conditions of employment was of secondary importance in a determination as to the bargainability of the resolution and that the resolution was concerned principally with the formulation of public policy. The circuit court set aside the commission's order and directed the district to commence bargaining over the "effects of passage of the anti-nepotism resolution upon the employment of Eldon Kravick as a school bus driver" which was consistent with part of the commission's order. The circuit court did not provide any effective retrospective economic remedy for Kravick, who was the only employee affected by the implementation of the anti-nepotism resolution.

The commission and the association appealed to the court of appeals. The district cross-appealed. The court of appeals found the commission had a rational basis for interpreting sec. 111.70, Stats., to require collective bargaining concerning the district's decision to adopt and implement its anti-nepotism policy and therefore reversed the judgment and remanded the cause to the trial court with directions to reinstate and affirm the commission's order.[4]

When the legislature charges an administrative agency to apply and enforce a particular statute as it has with

---

"(a) In his private capacity, negotiates or bids for or enters into a contract in which he has a private pecuniary interest, direct or indirect, if at the same time he is authorized or required by law to participate in his capacity as such officer or employe in the making of that contract or to perform in regard to that contract some official function requiring the exercise of discretion on his part; or

"(b) In his capacity as such officer or employe, participates in the making of a contract in which he has a private pecuniary interest, direct or indirect, or performs in regard to that contract some function requiring the exercise of discretion on his part."

[4] *School Dist. of Drummond v. WERC*, 120 Wis. 2d 1, 352 N.W.2d 662 (Ct. App. 1984).

the commission and ch. 111, Stats., the agency's construction and interpretation of the statute are entitled to great weight and any rational basis will sustain its practical interpretations. *Arrowhead United Teachers v. ERC,* 116 Wis. 2d 580, 593, 342 N.W.2d 709 (1984); *Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 67, 242 N.W.2d 231 (1976). We have qualified this standard, though, by stating that where the question involved is one of first impression, the court will accord the agency's interpretation only due weight in determining the appropriate statutory construction, rather than the great weight—rational standard. *Berns v. Wis. Employment Relations Comm.,* 99 Wis. 2d 252, 261, 299 N.W.2d 248 (1980). The great weight—any rational basis standard applies in situations where the " 'commission's interpretation reflects a practice or position "long continued, substantially uniform and without challenge by governmental authorities and courts." ' *Id.,* citing *Wood County v. Bd. of Vocational, T. & A. Ed.,* 60 Wis. 2d 606, 618, 211 N.W.2d 617 (1973)." *Arrowhead,* 116 Wis. 2d at 594.

The district alleges the commission has no experience on the subject of anti-nepotism rules and their effect on labor relations. Though this may be true, that allegation ignores the experience of the commission in determining subjects of mandatory or permissible bargaining which is the issue in this action. In any case where the commission is asked to determine whether a subject matter is mandatorily or permissibly bargainable, this court will apply the great weight—any rational basis standard to its "primary relation" conclusion.

As we stated in *West Bend Education Association v. Wisconsin Employment Relations Commission and West Bend Joint School District No. 1,* No. 82–1824, filed November 13, 1984:

"Sec. 111.70(1) (d) sets forth the legislative delineation between mandatory and nonmandatory subjects of bargaining. It requires municipal employers, a term de-

fined as including school districts, sec. 111.70 (1) (a), to bargain 'with respect to wages, hours and conditions of employment.' At the same time it provides that a municipal employer 'shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes.' Furthermore, sec. 111.-70 (1) (d) recognizes the municipal employer's duty to act for the government, good order and commercial benefit of the municipality and for the health, safety and welfare of the public, subject to the constitutional and statutory rights of the public employees.

"Sec. 111.70 (1) (d) thus recognizes that the municipal employer has a dual role. It is both an employer in charge of personnel and operations and a governmental unit, which is a political entity responsible for determining public policy and implementing the will of the people. Since the integrity of managerial decision making and of the political process requires that certain issues not be mandatory subjects of collective bargaining, *Unified School District No. 1 of Racine County v. WERC*, 81 Wis. 2d 89, 259 N.W.2d 724 (1977), sec. 111.70 (1) (d) provides an accommodation between the bargaining rights of public employees and the rights of the public through its elected representatives.

"In recognizing the interests of the employees and the interests of the municipal employer as manager and political entity, the statute necessarily presents certain tensions and difficulties in its application. Such tensions arise principally when a proposal touches simultaneously upon wages, hours, and conditions of employment and upon managerial decision making or public policy. To resolve these conflict situations, this court has interpreted sec. 111.70 (1) (d) as setting forth a 'primarily related' standard. Applied to the case at bar, the standard requires WERC in the first instance (and a court on review thereafter) to determine whether the proposals are 'primarily related' to 'wages, hours and conditions of employment,' to 'educational policy and school management and operation,' to ' "management and direction" of the school system' or to 'formulation or management of public policy.' *Unified School District No. 1 of Racine County v. WERC*, 81 Wis. 2d 89, 95–96, 102, 259

N.W.2d 724 (1977). This court has construed 'primarily' to mean 'fundamentally,' 'basically,' or 'essentially,' *Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 54, 242 N.W.2d 231 (1976).

"As applied on a case-by-case basis, this primarily related standard is a balancing test which recognizes that the municipal employer, the employees, and the public have significant interests at stake and that their competing interests should be weighed to determine whether a proposed subject for bargaining should be characterized as mandatory. If the employees' legitimate interest in wages, hours, and conditions of employment outweighs the employer's concerns about the restriction on managerial prerogatives or public policy, the proposal is a mandatory subject of bargaining. In contrast, where the management and direction of the school system or the formulation of public policy predominates, the matter is not a mandatory subject of bargaining. In such cases, the professional association may be heard at the bargaining table if the parties agree to bargain or may be heard along with other concerned groups and individuals in the public forum. *Unified School District No. 1 of Racine Co. v. WERC, supra,* 81 Wis. 2d at 102; *Beloit Education Asso., supra,* 73 Wis. 2d at 50–51. Stating the balancing test, as we have just done, is easier than isolating the applicable competing interests in a specific situation and evaluating them." (121 Wis. 2d at 5, 357 N.W.2d at 537.) (Footnotes omitted.)

The commission's interpretation of sec. 111.70, Stats., must be affirmed if there is any rational basis to support it. *Arrowhead,* 116 Wis. 2d at 593; *Beloit Education Asso.,* 73 Wis. 2d at 67. In the present case, the commission's resolution of the issue whether adoption and enforcement of an anti-nepotism policy is a mandatory subject for collective bargaining is entitled to great weight. The commission has gained substantial experience over many years of applying the "primary relation" concept in determining whether an employer's actions or contract proposals are mandatory or permissible subjects of collective bargaining under MERA. *Blackhawk*

*Teachers' Federation v. WERC,* 109 Wis. 2d 415, 423, 326 N.W.2d 247 (Ct. App. 1982).

Pursuant to the decision in *West Bend Education Association,* we must examine the record to determine whether the commission, using the primarily related standard, balanced the significant interests of the municipal employer (district) against that of the employees (association) to arrive at the conclusion that the district's decision to adopt and implement the anti-nepotism policy was primarily related to wages, hours and conditions of employment and was therefore a mandatory collective bargaining subject. If the proposal is primarily related to wages, hours and working conditions, it is a mandatory subject of bargaining, while if it is primarily related to educational policy and school management, it is a permissible subject concerning which the district has no duty to bargain. *Blackhawk Teachers',* 109 Wis. 2d at 424.

We approve of the court of appeals language in this case which stated: "Even though we, as a reviewing court, might interpret or apply a statute differently from the commission in this case, we must defer to the commission if a rational basis exists for its conclusion." *School Dist. of Drummond v. WERC,* 120 Wis. 2d 1, 9, 352 N.W.2d 662 (Ct. App. 1984).

It is clear from this record that the commission performed the required balancing test. In the commission's "Memorandum Accompanying Order Enlarging and Affirming Examiner's Findings of Fact, Conclusions of Law and Order," it stated that while there are no decisions of the commission directly on point with regard to an employer's duty to bargain over a nepotism policy, the commission has addressed issues of a similar nature on prior occasions.

The commission stated: "Clearly the resolution adopted by Respondent's School Board in the instant matter affects the job security of employes represented

by the Complainant Association." The commission noted the anti-nepotism policy provided for conditions of hiring of new employees and termination of present employees and therefore directly affected conditions of employment.

Although the nepotism policy involved public policy considerations, the commission's determination that it was primarily related to conditions of employment had a rational basis. The commission could reasonably conclude that the policy's direct effect on employment conditions outweighed the policy's effect in furthering the district's public policy considerations. The purpose of the nepotism policy was to avoid conflicts of interest and restore citizen confidence and trust in government. The nepotism policy pointedly prohibited the employment of the spouse or children of any board member. This applied to Eldon Kravick, the employee bus driver. However, the nepotism policy did not prohibit the employment of parents, siblings or other relatives of school board members. It is difficult therefore to measure the extent to which the policy's objectives were furthered. Nonetheless, the policy's effect on the job security, a condition of employment of a district employee (Kravick) whose spouse served on the school board, is direct and severe and here, clearly measurable.

We agree with the court of appeals without further comment that contrary to the district's position, sec. 946.13, Stats., did not require the district to adopt an anti-nepotism policy.

The commission in its decision pointed out that the district was not prohibited from considering the conflict of interest issue which was a legitimate concern of the school board, but if the district wants to impose nepotism limitations on employees who are subject to collective bargaining, it cannot ignore the limitations imposed by MERA. The commission went on to state that the enactment of a resolution, despite its validity and com-

pelling purpose, cannot remove the duty to bargain if the subject concerns the conditions of employment.[5]

The commission applied the balance test of *West Bend Education Association* and found the district's anti-nepotism resolution, though well-intended and of proper consideration, primarily related to terms of employment and therefore is a mandatorily bargainable subject. In applying the balancing test, the commission found no primary relationship of the anti-nepotism resolution that could not be approached through bargaining and on the other side of the scale found a heavy, direct and immediate primary relationship to terms of employment. There is a rational basis for the commission's conclusion arrived at after considering the positions of the district and association and therefore, the commission's order is reinstated as ordered by the court of appeals.

Since the commission found the adoption and implementation of the district's nepotism policy was a mandatory subject of collective bargaining, the commission concluded the district's failure to bargain was a prohibited practice under sec. 111.70(3)(a)4, Stats., and that its termination of Kravick's employment without cause was a prohibited practice under sec. 111.70(3)(a)5. The commission ordered the district to bargain the anti-nepotism policy resolution, to restore Kravick to his position pending bargaining, and to compensate Kravick for his loss resulting from the wrongful termination. The facets of the order were consistent with their conclusion to remedy the situation. The remedy is within the commission's powers. Secs. 111.70(4)(a) and 111.-07(4).[6] The commission is empowered to order parties

---

[5] Citing *Police Officers Association v. City of Detroit,* 85 LRRM 2536, 2540.

[6] Sec. 111.07(4), Stats., provides:

"(4) Within 60 days after hearing all testimony and arguments of the parties the commission shall make and file its findings of fact upon all of the issues involved in the controversy, and its order, which shall state its determination as to the rights of

to cease and desist or to take affirmative action the commission believes is necessary or proper to effectuate the policies of the labor relations statute. *WERC v. Evansville,* 69 Wis. 2d 140, 158–59, 230 N.W.2d 688 (1975) ; *General D. & H. Union v. Wisconsin E.R. Board,* 21 Wis. 2d 242, 251, 124 N.W.2d 123 (1963).

The commission ordered the district to bargain the impact of the anti-nepotism policy regardless of any proof of present effect upon other current bargaining unit employees.[7] The district argues it should only have the duty to bargain the policy and the actual impact on Kravick since he is the only employee affected at the time of the policy's implementation. We agree with the commission's order requiring the district to bargain both the policy and the general impacts of the policy regardless of any present impact on any other employee.

---

the parties. Pending the final determination by it of any controversy before it the commission may, after hearing, make interlocutory findings and orders which may be enforced in the same manner as final orders. Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend his rights, immunities, privileges or remedies granted or afforded by this subchapter for not more than one year, and require him to take such affirmative action, including reinstatement of employes with or without pay, as the commission deems proper. Any order may further require such person to make reports from time to time showing the extent to which he has complied with the order."

[7] The commission ordered in part:

"While the District did not specifically take exception to the finding of a duty to bargain the *impact* of the policy, we find it appropriate to affirm the Examiner's conclusion in that regard as well. We have, however, enlarged his Conclusion of Law and Order to reflect that the District's duty to bargain over both the policy and the impact thereof exists regardless of any present impact upon any current bargaining unit employe. It is the potential for that impact upon unit employes which triggers the duty to bargain."

As the court of appeals stated, both the employer's proposal and the effect or impact of that proposal on the employees' wages, hours and conditions of employment are subjects for bargaining. *Blackhawk Teachers'*, 109 Wis. 2d at 429–30; *see* sec. 111.70(1)(d), Stats. In bargaining the former, the parties confer about whether the proposal should be adopted and what it should say. In bargaining the latter, they discuss the manner of applying the policy adopted or exercising the function involved. *Blackhawk Teachers'*, 109 Wis. 2d at 429–30.

The commission in considering the issue of the district's anti-nepotism resolution applied a balancing test and in doing so concluded the resolution was a matter primarily affecting employment conditions and was therefore a mandatorily bargainable subject and this conclusion has a rational basis.

*By the Court.*—The decision of the court of appeals is affirmed.