MILWAUKEE POLICE ASSOCIATION, LOCAL 21, IUPA, AFL-CIO and Michael V. Crivello, Plaintiffs-Respondents,†

v.

CITY OF MILWAUKEE, Defendant-Appellant.

Court of Appeals

*No. 2012AP1928. Submitted on briefs April 2, 2013. —Decided April 16, 2013.*

2013 WI App 70

(Also reported in 833 N.W.2d 179.)

†Petition for Review.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Thomas J. Beamish*, assistant city attorney.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jonathan Cermele* and *Brendan P. Matthews* of *Ceremele & Matthews, S.C.*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. The City of Milwaukee appeals the judgment enjoining it from modifying the terms of the 2010–2012 labor agreement between it and the Milwaukee Police Association in connection with health-care-coverage costs. The circuit court also issued a writ of mandamus directing the City to comply with the terms of the labor agreement, and, specifically, to not modify

169

the Agreement's "specific deductibles, co-pays, prescription costs." Both the injunction and the derivative mandamus turn on whether the circuit court correctly applied WIS. STAT. § 111.70(4)(mc)6, which was created by section 2409cy of 2011 Wis. Act 32, published on June 30, 2011. Subsection (mc)6 provides:

> (mc) *Prohibited subjects of bargaining; public safety employees.* The municipal employer is prohibited from bargaining collectively with a collective bargaining unit containing a public safety employee with respect to any of the following:
>
> . . .
>
> 6. The design and selection of health care coverage plans by the municipal employer for public safety employees, and the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee.

The circuit court agreed with the Association that this provision did not affect the City's obligation to bargain in connection with the health-care-coverage provisions in the 2010–2012 labor agreement. On our *de novo* review, we reverse.

## I.

¶ 2. After the publication of 2011 Wis. Act 32, the City sought ways to reduce health-coverage costs in connection with the Association's members. The City and the Association disagreed about whether WIS. STAT. § 111.70(4)(mc)6 took away their right to bargain in connection with those costs—the City argued that it did; the Association argued that it did not. Recognizing that the dispute would ultimately have to be resolved by

170

the courts, the City and the Association agreed to the 2010–2012 labor agreement pending that resolution. On December 20, 2011, the Milwaukee Common Council approved the Agreement.[1] The Mayor approved the Agreement on December 27, 2011.[2] The City and the union executed the agreement on January 24, 2012.

¶ 3. Article 21 of the Agreement dealt with "Health Insurance." (Uppercasing and underlining omitted.) Article 21 runs twenty-two pages. At its head, Article 21 noted: "Certain items contained in this Article are currently under litigation." (Underlining omitted.) The Agreement also indicated, in Article 69, how the parties would treat provisions that conflicted with law: "Each party for the term of this Agreement specifically waives the right to demand or to petition for changes herein, whether or not the subjects were known to the parties at the time of execution hereof as proper subjects for collective bargaining. . . . If any federal or state law now or hereafter enacted results in any portion of this Agreement becoming void, invalid or unenforceable, the balance of the Agreement shall remain in full force and effect and the parties shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement for such portion." (Paragraphing altered.)

¶ 4. The Association sued the City and sought judgment:

---

[1] http://milwaukee.legistar.com/LegislationDetail.aspx?ID= 971611&GUID=D9156A52–06BC-45A7–A0FE-1C43BAF6B0E 3&Options=ID|Text|Search=110547 (last visited April 7, 2013).

[2] http://milwaukee.legistar.com/LegislationDetail.aspx?ID= 971611&GUID=D9156A52–06BC-45A7–A0FE-1C43BAF6B0E 3&Options=ID|Text|Search=110547 (last visited April 7, 2013).

- "Declaring that the term 'design' contained in § 111.70(4)(mc)6, Stats., applies to the classification of health care coverage plan, and does not allow the City to unilaterally make wholesale changes to the specifics of health care coverage plan(s);" and

- "Declar[ing] that the City must bargain any specific changes to its health care coverage plan(s) that affect [Association] members' financial exposure to health care."

(Parentheses in original, bracketed material added.) The Association later sought the writ of mandamus. As noted, the circuit court agreed with the Association that subsection (mc)6 did not forbid bargaining in connection with any of the items in Article 21.

¶ 5. On appeal, the Association makes an important concession:

> By its plain language, the "design and selection" clause of § 111.70(4)(mc)6, Stats., implicates *only* a municipality's choice with respect to health care *plans.*" That means a municipality is free to "design and select" both the plan type (i.e., a Health Maintenance Organization, Preferred Provider Organization, etc.), as well as it's [*sic*] structure (deductibles, maximum-out-of-pockets, co-pays, premiums, etc.), and any specific funding mechanism associated with the plan (i.e., a high deductible Health Savings Account, Health Reimbursement Account, Flexible Savings Account, etc.).

(Italics and underlining in original, footnote omitted.) The Association, however, contends that while "[m]unicipalities are free to do all those things unilaterally," the direct effect of those design-and-selection choices on its members' finances remains a subject for bargaining between it and the City. The Association argues:

However, the "design and selection" clause is just as significant for what it does *not* say. It says *nothing* about prohibiting bargaining over the financial exposure *directly resulting* from the municipality's "design and selection" decision. The legislature could easily have done so by specifying that premiums, deductibles, co-pays, etc., were prohibited. It did not. It limited the language to the "design and selection" of a *"plan."* Period.

(Italics and underlining in original.) A footnote to this paragraph encapsulates the Association's contention: "Once a plan is 'designed and selected,' bargaining would occur with respect to the 'direct results' of that 'design and selection' decision." We disagree.

## II.

¶ 6. There are no disputed facts here, only a question of what WIS. STAT. § 111.70(4)(mc)6 means. Accordingly, as noted, our review is *de novo*. *See State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d 488, 490.

Application of statutes requires that we "faithfully give effect to the laws enacted by the legislature." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124 ("It is the enacted law, not the unenacted intent, that is binding on the public."). In doing so, "[w]e assume that the legislature's intent is expressed in the statutory language." *Id.*, 2004 WI 58, ¶ 44, 271 Wis. 2d at 662, 681 N.W.2d at 124. If that language is clear, we apply it as it reads because the words used by the legislature are the best evidence of its intent. *Id.*, 2004 WI 58, ¶ 45, 271 Wis. 2d at 663, 681 N.W.2d at 124.

*State v. Swiams*, 2004 WI App 217, ¶ 5, 277 Wis. 2d 400, 404–405, 690 N.W.2d 452, 454.

¶ 7. As we have seen, Wis. Stat. § 111.70(4)(mc)6 prohibits bargaining by "public safety employees" in two respects.

(1) "The design and selection of health care coverage plans by the municipal employer for public safety employees,"

(2) "and the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee."

It thus modified 2011 Wis. Act 10, which excluded most public safety employees from Act 10's restriction of public-employee collective bargaining. *See* 2011 Wis. Act 10, § 210 (amending Wis. Stat. § 111.70(1)(a)). 2011 Wis. Act 10 was republished on June 28, 2011, and thus became effective on June 29, 2011. *See* Wis. Stat. § 991.11 ("Every act and every portion of an act enacted by the legislature over the governor's partial veto which does not expressly prescribe the time when it takes effect shall take effect on the day after its date of publication as prescribed in s. 35.095(1)(b).").[3] Section 210 of 2011 Wis. Act 10 was declared by 2011 Wis. Act 10, § 9332(1), to "first apply to employees who are covered by a collective bargaining agreement under subchapter IV of chapter 111 of the statutes that contains provisions inconsistent with those sections on

---

[3] 2013 Wis. Act 5, § 8, amended Wis. Stat. § 991.11, and it now reads: "Every act and every portion of an act enacted by the legislature over the governor's partial veto which does not expressly prescribe the time when it takes effect shall take effect on the day after its date of publication as prescribed in s. 35.095(1)(b)." The amendment does not affect this appeal. 2013 Wis. Act 5 was published on March 27, 2013.

the day on which the agreement expires or is terminated, extended, modified, or renewed, whichever occurs first." New section 111.70(4)(mc)6, created by 2011 Wis. Act 32, § 2409cy, was declared by 2011 Wis. Act 32, § 9332(2r) to "first appl[y] to an employee who is covered by a collective bargaining agreement under subchapter IV of chapter 111 of the statutes when the collective bargaining agreement expires or is extended, modified, or renewed, whichever occurs first."

¶ 8. The Association does not dispute that it represents "public safety employees." Further, as we have seen, it does not dispute that the City may design and select health-care coverage plans for its members. As we have also seen, it concedes that the City may design and select the health-care-coverage plans' "structure (deductibles, maximum-out-of-pockets, co-pays, premiums, etc.)" and the "specific funding mechanism associated with the plan (i.e., a high deductible Health Savings Account, Health Reimbursement Account, Flexible Savings Account, etc.)."[4] Nevertheless, the Association argues that it is still free to bargain how these "design and select" components affect its members' *finances,* even though the statute specifically forbids

---

[4] The Association's concession is consistent with Wis. Stat. § 149.14(4), which recognizes in connection with Health Insurance Risk-Sharing Plans, Wis. Stat. ch. 149, that the Health Insurance Risk-Sharing Plan Authority "shall establish the plan design" that "provide[s] benefit levels, deductibles, copayment and coinsurance requirements, exclusions, and limitations under the plan that the authority determines generally reflect and are commensurate with comprehensive health insurance coverage offered in the private individual market in the state." *See State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982) (We may consider "statutes relating to the same subject matter" in ascertaining the meaning of a provision.).

bargaining over "the *impact* of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee." (Emphasis added.)

¶ 9. The Association argues that the "impact" ban clause applies only to the "indirect" consequences of the design and selection of health-care-coverage plans. The examples it gives concern the ability to find convenient health-care provider services within the plans' networks.[5] It says, though, that the "direct" impact of the plans must still be bargained: "In the context of § 111.70(4)(mc)6, Stats., the 'direct result' of a municipality's 'design and selection' decision includes such things as 1) the deductible amount; 2) maximum-out-of-pocket expense; 3) co-pays, and; 4) prescription costs, etc." (Footnote omitted.) This contention ignores not only the clear language of WIS. STAT. § 111.70(4)(mc)6, but also the Association's concession that the "design and selection" structural components may be fashioned by the City, to use its word, "unilaterally." It would make no sense for the legislature to have granted to the City and other municipal employers the unilateral right to design and select health-care-coverage plans irrespective of the "impact" the "design and selection" has "on the wages, hours, and conditions of employment of the public safety employee," but require bargaining on what the Association calls the "direct result" on the public-safety employee's finances.

---

[5] The Milwaukee Police Association gives the following examples of what it says are "indirect" impacts: "1) treating physicians no longer being in the 'network'; 2) the need to find a new physician; 3) the need to change treatment facilities; 4) the lack of available 'on-site' treatment; 5) the hours of treatment availability, and; 6) the fact that treatment for preventive services may no longer be provided at a work location, etc."

¶ 10. It is true, as the Association argues, that before enactment of Wis. Stat. § 111.70(4)(mc)6, the cases recognized a distinction between a municipal employer's unfettered right to manage its employees, which was not a proper subject for collective bargaining, and the financial impact that managerial changes might have on the affected employees, which was a proper subject for bargaining. *See School District of Drummond v. Wisconsin Employment Relations Commission*, 121 Wis. 2d 126, 135, 358 N.W.2d 285, 290 (1984) (" 'If the employees' legitimate interest in wages, hours, and conditions of employment outweighs the employer's concerns about the restriction on managerial prerogatives or public policy, the proposal is a mandatory subject of bargaining.' ") (quoted source omitted). Indeed, this is what the statute considered by *School District of Drummond* said. *See id.*, 121 Wis. 2d at 133–134, 358 N.W.2d at 289. But, Wis. Stat. § 111.70(4)(mc)6 has changed that for public-safety employees.

¶ 11. The Association also seeks support from Governor Scott Walker's message explaining why he was vetoing certain aspects of 2011 Wis. Act 32 unrelated to the dispute in this case. The governor's message observed: "Under Act 10, current public safety employees retain the ability to bargain for wages, hours and conditions of employment, including the ability to bargain for employer payment of employee-required retirement and health insurance contributions." That was true, of course. *But* 2011 Wis. Act 32, § 2409cy, which the governor did not veto, changed that by enacting § 111.70(4)(mc)6, and, under that provision, as we have already seen, "the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee" is no longer a subject that a

municipality may bargain with the unions representing public-service employees. Accordingly, we reverse the circuit court judgment and remand with directions that the previously entered writ of mandamus be vacated.[6]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[6] As noted, WIS. STAT. § 111.70(4)(mc)6 "first applies to an employee who is covered by a collective bargaining agreement under subchapter IV of chapter 111 of the statutes when the collective bargaining agreement expires or is extended, modified, or renewed, whichever occurs first." 2011 Wis. Act 32, § 9332(2r). Neither party contends that 2010–2012 labor agreement is not such an agreement. Accordingly, we do not discuss it. *See Reiman Associates , Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981).