WISCONSIN PROFESSIONAL POLICE ASSOCIATION,
Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Appellant,

EAU CLAIRE COUNTY, Respondent-Co-Appellant.

Court of Appeals

*No. 2012AP2701. Submitted on briefs September 6, 2013.
—Decided November 27, 2013.*

2013 WI App 145

(Also reported in 841 N.W.2d 839.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven C. Kilpatrick*, assistant attorney general, and *J. B. Van Hollen*, attorney general.

On behalf of the respondent-co-appellant, the cause was submitted on the briefs of *Keith R. Zehms, Corporation Counsel* for *Eau Claire County*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Andrew D. Schauer, Wisconsin Professional Police Association*, Madison.

Before Blanchard, P.J., Lundsten and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J.   This case involves two related limitations on public sector collective bargaining under the Municipal Employment Relations Act, Wis. Stat. § 111.70 (2011–12),[1] as amended by 2011 Wis. Act 32. The new limitations prohibit bargaining regarding the "design and selection" of health care coverage plans for public safety employees, and regarding the "impact" of the "design and selection" of such plans "on

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

wages, hours, and conditions of employment." The single question presented is whether bargaining is prohibited for public safety employees on the subject of the allocation of responsibility between employees and employers to pay deductibles required under a health care coverage plan. As shorthand, we will refer to this potential bargaining subject as the "deductible payment allocation."

¶ 2.    The Wisconsin Employment Relations Commission (Commission) interpreted the new statute, WIS. STAT. § 111.70(4)(mc)6., to prohibit Eau Claire County and the Wisconsin Professional Police Association (Association) from bargaining regarding the deductible payment allocation. Applying a plain language interpretation of § 111.70(4)(mc)6., the Commission concluded that the deductible payment allocation involves the "content" of a plan and has an impact on wages, hours, and conditions of employment, and is therefore a prohibited subject of bargaining. On review under WIS. STAT. ch. 227, the circuit court disagreed, based on its plain language interpretation that the deductible payment allocation is "extrinsic" to a plan, and that, as a consequence, such an allocation is neither part of the "design and selection" of a plan nor an impact of plan design and selection on wages, hours, and conditions of employment.

¶ 3.    We reach the same conclusion as the circuit court under a plain language interpretation of WIS. STAT. § 111.70(4)(mc)6., which includes consideration of a closely related statute. Accordingly, we affirm.

### Background

¶ 4.    The new statute prohibits bargaining regarding "[t]he design and selection of health care coverage plans by the municipal employer for public safety

222

employees," and regarding "the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee." Wis. Stat. § 111.70(4)(mc)6.

¶ 5. The Association represents deputy sheriffs employed by the Eau Claire County Sheriff's Department. The County selected a "Medical Benefit Plan," as of January 1, 2011, which covers the deputies. The plan sets deductibles for both individuals and families. Under the terms of the plan, this means that a specified amount of money must first be paid into the plan each year before coverage kicks in for the individual or for the family. The plan does not address whether the employer or the employee pays the deductible; that is, under our shorthand, it does not address the deductible payment allocation.[2]

¶ 6. The Association, on behalf of the deputies, made the following proposal to the County:

> The Association fully acknowledges the right of the [County] to choose the carrier and to establish the plan design [of a health care coverage plan]. Should the [County] design or choose a plan design which includes a deductible, the employees shall be responsible for

[2] As an aside regarding terminology used in the plan selected by the County, we observe that the plan is addressed to "You," the covered employee. More specifically, the definition of "deductible" in the plan is phrased in terms of what "You," the covered employee, "must pay" into the plan. This wording might suggest that the County and the covered employees are not permitted, at least under the terms of such a plan, to mutually decide how to allocate deductible payments, but instead deductible payments must be made exclusively by employees. However, neither the Commission nor the County argue that the plan's employee-must-pay language carries weight when construing the meaning of Wis. Stat. § 111.70(4)(mc)6. We address this potential issue no further.

paying the first two hundred fifty ($250) [single person]/five hundred dollars ($500) [family] of the deductible.

¶ 7. The County responded that this proposal presents a subject that cannot be bargained under Wɪs. Sᴛᴀᴛ. § 111.70(4)(mc)6. In September 2011, the County and the Association jointly sought from the Commission a declaratory ruling as to whether the proposal addresses a prohibited subject under § 111.70(4)(mc)6. The parties agreed to a short stipulation of facts and exhibits before the Commission.

¶ 8. In February 2012, the Commission issued a split decision on the question of whether the proposal presents a prohibited subject of bargaining. Relying on a plain language interpretation of the statute, the Commission majority concluded that the deductible payment allocation is a prohibited subject of bargaining, and on that basis declared that the parties may not bargain on this subject.

¶ 9. As stated above, the circuit court reversed the Commission's decision, and the Commission and the County now appeal.

### *Standard of Review*

¶ 10. On appeal, we review the decision of the Commission, not that of the circuit court. *Mercycare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 25, 328 Wis. 2d 110, 786 N.W.2d 785. Thus, the matter before us is the Commission's declaration prohibiting bargaining regarding the Association's proposal. However, all parties agree that our task is to interpret Wɪs. Sᴛᴀᴛ. § 111.70(4)(mc)6.

224

¶ 11.   Interpretations of statutes present questions of law that this court decides independently. *Mercycare*, 328 Wis. 2d 110, ¶ 26. " 'Because statutory interpretation is a question of law, a court is never bound by an agency's interpretation of a statute.' " *Id.*, ¶ 27 (citation omitted). At the same time, "a court will under certain circumstances give deference to an agency's statutory interpretation." *Id.* The three levels of deference that courts accord to agency interpretations of statutes are:   none, due weight, and great weight. *Id.*, ¶ 28. The levels of deference "take into account the comparative institutional qualifications and capabilities of the court and the administrative agency." *Id.*

¶ 12.   In this appeal, the Commission first argues that its interpretation is entitled to "great weight" deference, because it "has gained substantial experience over many years" determining whether particular subjects of bargaining are mandatory, permissive, or prohibited. A court applying great weight deference "sustains an agency's reasonable statutory interpretation, even if the court concludes that another interpretation is equally reasonable, or even more reasonable, than that of the agency." *Racine Harley–Davidson, Inc. v. Division of Hearings & Appeals*, 2006 WI 86, ¶ 17, 292 Wis. 2d 549, 717 N.W.2d 184. After taking this position, however, the Commission acknowledges that the statute at issue is new and makes an alternative argument that the lesser, "due weight" deference may be merited.

¶ 13.   The County argues for "great weight" deference, pointing in part to a statement by our supreme court that in "any case where the commission [WERC] is asked to determine whether a subject matter is mandatorily or permissibly bargainable, this court will apply

the great weight ... standard." *School Dist. of Drummond v. WERC*, 121 Wis. 2d 126, 133, 358 N.W.2d 285 (1984).

¶ 14. The Association argues that, because we are presented with a legal issue of first impression based on stipulated facts, no deference should be given to the Commission.

¶ 15. We conclude that we need not decide this issue. Even if we were to accord great weight deference to the Commission's construction of Wis. Stat. § 111.70(4)(mc)6., we would still conclude, as explained below, that the only reasonable interpretation is that the statute does not prohibit bargaining regarding the deductible payment allocation.[3]

## *Discussion*

■

¶ 16. The issue on appeal is whether Wis. Stat. § 111.70(4)(mc)6. prohibits bargaining regarding the deductible payment allocation. The Commission deci-

---

[3] We observe as an aside that the Commission decision did not purport to rely on pertinent experience or institutional competence in construing the statute, but was instead explicitly based on a plain meaning interpretation. In addition, on appeal the Commission provides us with no examples of pertinent experience, such as its previous interpretation or application of the particular terms or concepts at issue in this appeal. We further note that the passage that the County cites from *School District of Drummond v. WERC*, 121 Wis. 2d 126, 133, 358 N.W.2d 285 (1984), appears to reach broadly when quoted in isolation. However, when read in the context of the entire opinion, the passage appears to be a statement that courts are to rely on the expertise and experience of the Commission in interpreting whether a subject must be bargained because the subject is "primarily related" to "wages, hours, and conditions of employment" or managerial decision-making. *See id.* at 134. Those questions are not presented here.

sion here answered in the affirmative. The Commission acknowledged that the deductible payment allocation arguably does not involve "[t]he design and selection of health care coverage plans by the municipal employer for public safety employees." However, the Commission concluded that it does involve "the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of public safety employees."

¶ 17.  "The purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation " 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *Id.*, ¶ 45 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Statutory language is interpreted in context, and it must be understood in relation to "the language of surrounding or closely-related statutes." *Id.*, ¶ 46. Courts interpret statutes "to avoid absurd or unreasonable results." *Id.* When statutory interpretation yields a plain meaning, extrinsic sources need not be consulted, "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." *Id.*, ¶¶ 46, 51.

## A.  Statute at Issue

¶ 18.  In resolving an appeal that shared elements with this one, but that diverged in significant respects,

227

this court recently noted that 2011 Wis. Act 10 excluded most public safety employees from Act 10's restrictions on public employee collective bargaining. *See Milwaukee Police Ass'n v. City of Milwaukee*, 2013 WI App 70, ¶ 7, 348 Wis. 2d 168, 833 N.W.2d 179. However, 2011 Wis. Act 32 changes this in some respects, one of which is Section 2409cy of Act 32, creating Wis. Stat. § 111.70(4)(mc)6., which modified Act 10 for public safety employees. *See id.* Subsection (mc)6. provides:

> (mc) *Prohibited subjects of bargaining; public safety employees.* The municipal employer is prohibited from bargaining collectively with a collective bargaining unit containing a public safety employee with respect to any of the following:
>
> . . . .
>
> 6. The design and selection of health care coverage plans by the municipal employer for public safety employees, and the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee.

This prohibits bargaining on two subjects: (1) the design and selection of health care coverage plans by the municipal employer for public safety employees, and (2) the impact of the design and selection of the health care coverage plans on the wages, hours, and conditions of employment of the public safety employee. There is no dispute in this case that the deputies represented by the Association are classified as "public safety employees." *See* § 111.70(1)(mm).

### B.   Whether Bargaining is Prohibited

¶ 19.   The Association argues that the circuit court correctly concluded that, under Wis. Stat.

§ 111.70(4)(mc)6., the deductible payment allocation does not involve "[t]he design and selection of health care coverage plans by the municipal employer for public safety employees." The Association contends, in part, that in creating this ban on bargaining over particular subjects, the legislature used no language reflecting an intent that the deductible payment allocation would be considered to be an element of a plan and, therefore, used no language prohibiting bargaining over the deductible payment allocation. Instead, decisions of employers and employees regarding how to allocate between themselves responsibility for the cost of deductibles represent a separate interaction that does not involve the employer's design and selection of a plan provided by an insurer. Turning to the second, "impact" prong of the statute, the Association further argues that, because the deductible payment allocation is not an element of the design or selection of health care coverage plans, the deductible payment allocation cannot logically involve "the impact of the design and selection of the health care coverage plans" on any subject, including on the subjects of "the wages, hours, and conditions of employment of the public safety employee." In section 1. below, we explain why we are persuaded by these arguments.

¶ 20.    The Commission and the County advance mostly overlapping arguments. To highlight one argument that both emphasize, they contend that the Commission correctly recognized, and the circuit court failed to recognize, that the single, evident purpose of WIS. STAT. § 111.70(4)(mc)6. is to curtail the overall health insurance costs for municipal employers. They argue that this purpose is inconsistent with mandatory bargaining regarding the deductible payment alloca-

tion. In subsections 2. and 3. we explain why we reject this and other arguments made by the Commission and County.

### 1. Plain Meaning Analysis

¶ 21.   We begin with a basic point of agreement between the parties that narrows our focus, one of several points that distinguishes this case from *Milwaukee Police Ass'n*, as we discuss below. The parties here agree that the "design and selection of . . . plans" language in WIS. STAT. § 111.70(4)(mc)6. covers the decision as to whether a plan will have deductibles, and if so, in what amounts. Consistent with this understanding, the Association did not propose bargaining with the County over the existence or size of the deductibles in the plan selected by the County, and does not now suggest that this is a mandatory bargaining subject.

¶ 22.   We next narrow our discussion by clarifying that the "impact" prong of WIS. STAT. § 111.70(4)(mc)6., does not provide an independent basis for affirming the Commission's decision. If, as we conclude below, the deductible payment allocation is not part of the design and selection of a plan, then it necessarily follows that such allocation cannot constitute a subject that involves the impact of the design and selection of a plan on any subject. The symmetry of the statute is patent; it has two, balanced halves. The only way we can see to reach a different conclusion, based on the specific wording and symmetry of the statute, would be unreasonable, namely, to read the phrase "design and selection of the health care coverage plans" as having different meanings in the two halves of § 111.70(4)(mc)6. What is prohibited is bargaining regarding the "impact *of the*

230

*design and selection of the health care coverage plans* on the wages, hours, and conditions of employment of the public safety employee." Sec. 111.70(4)(mc)6. (emphasis added). Following the logic of the language used in the statute, the deductible payment allocation cannot be an impact of the design and selection of a plan because it is not part of the design and selection of a plan.[4]

¶ 23.   We now turn to the parties' dispute over the meaning of the first prong of WIS. STAT. § 111.70(4)(mc)6., the prohibition of bargaining regarding the "design and selection of health care coverage plans." We first address the significance of the words "design" or "selection," or the phrase "design and selection of . . . plans," leaving aside for the moment the meaning of "health care coverage plans." On this topic, we conclude that there is no substantive issue in this appeal about the meaning of these terms. It is true that the Commission in its decision, and the parties on appeal, sometimes speak in terms of what may be included in "plan design" or "the design of a plan." Further, some passages in the Commission's briefing suggest that the Commission may contend that "design" has a meaning or significance that the circuit court overlooked. The Commission may view "design" as a

---

[4] The Commission may be arguing that the design or selection of a plan with a deductible inevitably requires a determination of who pays the deductible which, in turn, has an impact on an employee's net wages. The Commission seems to reason that this means that the deductible payment allocation is a prohibited subject of bargaining. If the Commission means to make this argument, we are not persuaded. This argument conflates a particular plan feature (specified deductibles) with a non-plan subject (who pays the deductible). The former is a prohibited subject of bargaining. The latter has an effect on net wages, but it is not a prohibited subject of bargaining because it is not an element of the plan.

broad term that contemplates municipal employers creating plans that address virtually any topic the employer wants to address, including, if the employer would like, deductible payment allocations. However, if this "design"-based argument is intended, we reject it. In the phrase "design . . . of health care coverage plans," the word "design" cannot reasonably be read to amplify or expand on the phrase "health care coverage plans." That is, the question as to whether the deductible payment allocation is an *element of a healthcare plan* is the same question as to whether the deductible payment allocation is an *element of the design of a healthcare plan.* And, as far as we can discern, no party suggests that we should apply any technical or special definition to the words "design," "selection," or "design and selection."

¶ 24.   Putting some of these points together, then, for purposes of this appeal we proceed from the following premises:   the County is free to design and select, in any manner it choses and without negotiation with the Association, a plan that includes no deductibles or deductibles of any amount. That is, the existence and amounts of deductibles are elements of a plan, or elements of plan design, that the County may unilaterally create or pick in any way.

¶ 25.   With these clarifications, we understand the substance of the parties' dispute to be the following: whether the legislature intended deductible payment allocations to be considered elements of "health care coverage plans," as that phrase is used in Wis. Stat. § 111.70(4)(mc)6. For the following reasons, we conclude that the phrase "health care coverage plans" does not, as a matter of plain language interpretation, include the deductible payment allocation.

¶ 26. By its terms, the phrase "health care coverage plans" is limited to the elements contained in such plans. However, Wis. Stat. § 111.70(4)(mc)6. is silent on the question of what does or does not constitute an element of a plan. Yet, as the circuit court explained, there can be no reasonable question that a plan addresses "the rights and obligations that flow between the insurer and the insured." Thus, any element of a plan would have to concern these rights and obligations. A deductible concerns these rights and obligations, but a deductible payment allocation does not. The deductible payment allocation, as the circuit court reasoned, is a subject extrinsic to the rights and obligations of an insurer and insured. It is an allocation not between insurer and insured, but between employer and employee.

¶ 27. For this reason, we agree with the Association that we would need to read new language into Wis. Stat. § 111.70(4)(mc)6. in order to conclude that bargaining is prohibited regarding how a plan's required deductible is paid. If the legislature had the intent that the Commission ascribes to it, the legislature would have referred, at least in *some* manner, to the subject of how much employees must themselves pay to cover costs related to health care coverage plans. And, neither the Commission nor the County argue that plans that contain deductibles could or ordinarily would prohibit some entity or person other than the employee from paying any share of or all of a deductible amount on a covered employee's behalf. So far as the parties have argued the issues, it appears that plans simply require, or do not require, payment of deductibles from one or more sources.

¶ 28. We find support for this reading of Wis. Stat. § 111.70(4)(mc)6. in a closely related statute. *See Kalal,*

271 Wis. 2d 633, ¶ 46 (statutory language is interpreted in context, and it must be understood in relation to "the language of surrounding or closely-related statutes."). As we observed in *Milwaukee Police Ass'n* and the circuit court in this case noted, one provision of the "Coverage" section of Chapter 149, addressing Health Insurance Risk-Sharing Plans, provides in pertinent part:

> (4) PLAN DESIGN .... [The Health Insurance Risk-Sharing Plan Authority] shall establish *the plan design,* after taking into consideration the levels of health insurance coverage provided in the state and medical economic factors, as appropriate .... [T]he authority *shall provide benefit levels, deductibles, copayment and coinsurance requirements, exclusions, and limitations under the plan that the authority determines generally reflect and are commensurate with comprehensive health insurance coverage offered in the private individual market in the state ....*

WIS. STAT. § 149.14(4) (emphasis added); *see Milwaukee Police Ass'n,* 348 Wis. 2d 168, ¶ 8 n.4.[5]

¶ 29. This language suggests that "plan design" addresses such subjects as deductibles and copayments that may be required to be paid into a plan, but does not address, directly or indirectly, how a covered employee

---

[5] We find little additional value in a separate provision identified by the circuit court, namely, the "Definitions" section of Chapter 635, addressing Small Employer Health Insurance. This provision defines "benefit design characteristics" to mean "covered services, cost sharing, utilization management, managed care networks and other features that differentiate plan or coverage designs." WIS. STAT. § 635.02(1m). Even assuming without deciding that there is a close relationship between § 635.02(1m) and WIS. STAT. § 111.70(4), lacking further definitions of the general terms used in § 635.02(1m), they appear to add little not already suggested by WIS. STAT. § 149.14(4).

and his or her employer might allocate their respective obligations to make such payments. It suggests that "plan design" describes the "comprehensive health insurance *coverage offered*." (Emphasis added.) We see no reason to conclude that this would involve the question of who, between employer and employee, is obligated to pay into the plan what share of any deductibles. Put differently, Wis. Stat. § 149.14(4) suggests that "plan design" involves the "coverage offered," and the coverage offered does not change depending on the allocation of deductible costs between employer and employee.

### 2. The Commission's Arguments on Appeal

¶ 30. We now address specific arguments made by the Commission on appeal, which include one made in its reply brief based on *Milwaukee Police Ass'n*, an opinion issued after the Commission's principle brief was filed.

¶ 31. The Commission makes an argument based on what it submits is the "obvious" or "manifest" purpose of Wis. Stat. § 111.70(4)(mc)6. The Commission submits that this manifest purpose is to allow municipal employers to "curtail health insurance costs." This argument resembles the assertion in the Commission's decision that, based on the terms of the statute, the legislature "clearly did not intend" to "turn[] the employer into a co-insurer of benefits."

■■■

¶ 32. However, courts are to "assume that the legislature's intent is expressed in the statutory language." *Kalal*, 271 Wis. 2d 633, ¶ 44. If the plain language of Wis. Stat. § 111.70(4)(mc)6. does not prohibit bargaining regarding the deductible payment allocation, as we have concluded, then our analysis ends

there and we have no reason to consider general purposes of the legislature, such as the purpose to reduce employer costs.

¶ 33.   Moreover, the implied premise of this argument is that it is "obvious" or "clear" that the legislature intended for WIS. STAT. § 111.70(4)(mc)6. to create the *maximum* potential for employers to cut costs by limiting collective bargaining to the *maximum* extent.[6] However, the Commission simply asserts that this is "the most reasonable interpretation" of the language of the statute, without providing support. The Commission fails to point to any language in § 111.70(4)(mc)6. or any related statute that supports its contention that the purpose of enacting § 111.70(4)(mc)6. was to limit collective bargaining to the maximum extent, including bargaining over deductible payment allocation.

¶ 34.   We also observe that this argument is directly undermined by a concession the Commission and the County make, which is that unions remain free to bargain with their municipal employers over amounts of employee payments toward insurance *premiums*. Thus, the Commission and the County acknowledge a legislative interest, in enacting WIS. STAT. § 111.70(4)(mc)6., to balance factors favoring bargaining regarding health care coverage plans against factors disfavoring bargaining in this general context, including holding down municipal outlays. We cannot square the Commission's concession that employees remain free to bargain over contributions to insurance premiums with the Commission's "manifest purpose" argument.

---

[6] The County argues that the Association's proposal "ignores *the* purpose of the statute" (emphasis added), also resting on the premise that the statute has a single purpose, which is to eliminate bargaining to the maximum extent, as opposed to limiting bargaining in some areas and preserving it in others.

236

¶ 35. In a separate argument, the Commission points to a passage from an extended explanatory note prepared by the state legislative fiscal bureau, which accompanied the legislative committee motion for passage of the relevant Act 32 provision. The note stated, in pertinent part, "The employee contribution requirements for any offered coverage for represented law enforcement and fire personnel would still be collectively bargained." The parties dispute how the legislature would have understood the phrase "employee contribution requirements" in this note. The Commission majority contended that the "employee contribution requirements" referred solely to employee contributions to *premiums* and not to contributions to deductibles, while the dissenting commissioner contended (as does the Association now) that this should be read broadly, to include deductible payment allocations. However, we have no reason to consider what the legislative fiscal bureau meant to convey by using the phrase "employee contribution requirements." As explained above, we are not persuaded that there is ambiguity in the terms of Wis. Stat. § 111.70(4)(mc)6. for purposes of this case, requiring us to resort to this legislative history. Thus, we do not reach the question of whether the disputed reference has a single, clear meaning that we can understand based on arguments now advanced by any party.[7]

---

[7] Moreover, even if the terms of Wis. Stat. § 111.70(4)(mc)6. were ambiguous, we do not consider the Commission's argument to be persuasive. The Commission points to four provisions in the statutes—one also located in § 111.70(4)(mc), and three located in Wis. Stat. ch. 40 (Public Employee Trust Fund). The Commission asserts that each of these other provisions employs phrases that are at least close to the phrase "employee contribution requirements." And, the Commission asserts, in each case these are references to a type of "contribution" to be

¶ 36. In its reply brief, the Commission relies heavily on *Milwaukee Police Ass'n* and argues that this court's decision in that case controls, requiring a conclusion here that the deductible payment allocation is a prohibited subject of bargaining. As we now explain, this argument is unavailing because of differences between the two cases and the way this court characterized and resolved the argument made by the losing party in *Milwaukee Police Ass'n*.

¶ 37. The appeal in *Milwaukee Police Ass'n* was not from an administrative decision following WIS. STAT. ch. 227 review, but instead from a permanent injunction and a writ of mandamus entered by the circuit court. One reason that *Milwaukee Police Ass'n* is distinguishable from the instant appeal is that the injunction and writ at issue in that case were written in much broader terms than those presented to the Commission here. The circuit court granted the union's request for a judgment declaring that WIS. STAT. § 111.70(4)(mc)6. does "not forbid bargaining in connection with any of the items in Article 21" of a 2010–12 labor agreement between the City and the union. *Milwaukee Police Ass'n*, 348 Wis. 2d 168, ¶¶ 1, 4.[8] Article 21 established,

---

made by employees that does not include payments toward deductibles. However, the Commission does not develop an argument that the other statutes address situations in which the deductible payment allocation is a potential subject that is plainly excluded through use of a phrase like "employee contribution requirements." Moreover, this argument is premised on the notion that the legislative fiscal bureau used an exceedingly subtle method to signal legislative intent to exclude the deductible payment allocation, despite the evident importance of these issues to many persons and entities and the need for clarity. These would be reasons to reject the Commission's third argument if we concluded that the statute were ambiguous.

[8] The City was permanently enjoined from:

among other things, the amounts for major medical deductible for individuals and families covered by the basic plan. Thus, the circuit court in *Milwaukee Police Ass'n* declared that the City did not have unilateral authority to design and select deductible amounts. This was presumably at the request of the union, which at

A.  Enacting legislation which in any manner modifies the terms and conditions of the Health Insurance Article contained in the 2010–2012 Labor Agreement between the City of Milwaukee ("City") and the Milwaukee Police Association ("MPA") . . ., unless such legislation represents the product of a bargained for exchange between the parties, or the result of interest arbitration;

B.  Imposing health care costs, including but not limited to deductibles, copays, prescription costs, etc., other than as set forth in the 2010–2012 Labor Agreement between the City and MPA, unless agreed to by the parties or the result of interest arbitration;

C.  Implementing health care coverage other than as set forth in the 2010–2012 Labor Agreement between the City and the MPA, unless agreed to by the parties or the result of interest arbitration;

D.  Making any attempt to unilaterally adjust or modify any aspect of health care coverage identified in the 2010–2012 Labor Agreement between the City and the MPA.

Consistent with this broad injunction language, the derivative writ of mandamus ordered the City, in pertinent part, to:

1.  Comply with the terms of its own legislation which adopted the 2010–2012 Labor Agreement between the City of Milwaukee and the Milwaukee Police Association (including the specific deductibles, co-pays, prescription costs, etc., identified in Article 21 of that 2010–2012 Agreement);

2.  NOT to impose health insurance deductibles, co-pays, prescriptions costs, etc., against MPA members other than as was agreed to (and contained in) the parties' 2010–2012 Labor Agreement:

3.  NOT to implement any health care plan at odds with the terms of the 2010–2012 Labor Agreement, . . . .

239

least at times argued that the size of deductibles is a subject that must be bargained under § 111.70(4)(mc)6. *Id.*, ¶ 9.[9] This is a position disavowed by the Association in the instant case.

¶ 38. Further, and more significant for current purposes, this court in *Milwaukee Police Ass'n* understood the union on appeal to be attempting to defend the circuit court's broad injunction and writ by advancing a particular argument that this court rejected, and this court purported to do nothing more than to reject that argument. The union's argument depended on a distinction that the union offered between "direct" versus "indirect" effects of decisions by municipal employers—such as the decision whether to include deductibles in a plan—on the "finances" of covered employees. *See id.*, ¶¶ 5–11. Under this approach, which formed the framework of the union's argument, "the direct effect" on the "finances" of covered employees "remains a subject for bargaining" under WIS. STAT. § 111.70(4)(mc)6., while the second, "impact" clause of § 111.70(4)(mc)6. applies to ban negotiation regarding the "indirect" consequences on employee "finances" of design-and-selection decisions. *Id.*, ¶¶ 5, 9. This court

---

[9] On appeal in this case, the Commission states that the union in *Milwaukee Police Ass'n* conceded that deductibles cannot be bargained under WIS. STAT. § 111.70(4)(mc)6. However, the union's argument was not so simply stated. It is true that this court first explained that the union acknowledged that, under § 111.70(4)(mc)6., a municipal employer "is free to" design and select deductibles. *See Milwaukee Police Ass'n v. City of Milwaukee*, 2013 WI App 70, ¶¶ 5, 8, 348 Wis. 2d 168, 833 N.W.2d 179. However, in the course of its unavailing "indirect/direct result" argument, the union also argued that "the deductible amount" is a "direct result" of a design and selection decision and therefore is a subject that must be bargained. *See id.*, ¶ 9.

explained that the union's position on appeal could be summarized in the following sentence: "Once a plan is 'designed and selected,' bargaining could occur with respect to the 'direct results' of that 'design and selection' decision." *Id.*, ¶ 5. This court made clear that it was addressing only this specific, "direct results" argument. *See id.*, ¶¶ 5–9.

¶ 39. This court rejected the union's argument as making "no sense." *Id.*, ¶ 9. This is because the union failed to explain how it could argue that bargaining is required regarding all decisions that have a "direct result" on employee "finances," while conceding that bargaining is prohibited as to the design and selection of "structural components" of a health coverage plan. *Id.* This court addressed only this nonsensical "direct result" argument.

¶ 40. Thus, the Commission is wide of the mark when it argues here that *Milwaukee Police Ass'n* "clearly held that where a health care coverage plan is designed to include deductibles, how that affects the 'finances' of bargaining unit members is an 'impact' of the design of the plan within the meaning of WIS. STAT. § 111.70(4)(mc)6." The paragraphs of *Milwaukee Police Ass'n* that the Commission cites in support of this proposition explicitly address the particular argument of the union that, as we reference above, is not advanced by the Association here: that any element of a plan, perhaps even the amounts of deductibles, must be bargained under § 111.70(4)(mc)6., if that plan element would have a "direct effect" on the "finances" of covered employees. *See id.*, ¶¶ 5, 8–10. And, the Commission in its decision in the instant case did not purport to address the Milwaukee union's "direct" versus "indirect" concept. We would, of course, be obligated now to follow any statement of law in *Milwaukee Police Ass'n* appli-

241

cable to this appeal. However, the Commission and the County fail to identify any statement from *Milwaukee Police Ass'n* that supports their current arguments, as the issues have been framed here before the Commission and on appeal.

### 3.   The County's Arguments

¶ 41.   The County makes a number of arguments that parallel those made by the Commission and we will not address those a second time. The following are additional arguments.

¶ 42.   In its lead argument, the County may be suggesting that the legislature anticipated that all plans would address the deductible payment allocation. This is because the deductible payment allocation was, in the words of the County, considered to be a "plan design element" in prior collective bargaining agreements entered into by the County and the Association, before the adoption of Acts 10 and 32. Therefore, we should conclude that the legislature intended it to be a "plan design element" for purposes of Wis. Stat. § 111.70(4)(mc)6. We find this argument difficult to track. In any case, we conclude that the County does not develop an argument that any particular aspect of the history of collective bargaining between the County and the Association undermines our plain language interpretation of a statute that was, as all agree, clearly intended to be a break from the prior approaches to collective bargaining.

¶ 43.   The County makes a series of arguments tied to a passage in the Commission's decision explaining that deductibles "create financial incentives (or disincentives) to use" medical services by covered employees. This is part of the Commission's position, as

expressed in its decision, that "decisions regarding . . . deductibles are" "integral parts of plan design," and therefore part of the "design and selection of health care coverage plans." The Commission decision stated that it is "illogical to assume that decisions regarding co-pays and deductibles are not integral parts of plan design."

¶ 44. However, assuming without deciding the accuracy of observations offered by the Commission as common and ordinary understandings regarding incentives in this context, the legislature did not speak in these terms in attempting to balance the pros and cons of placing particular subjects out of bounds for bargaining by public safety employees. Even assuming that there was some legislative focus on the general proposition that high employee contributions to deductibles, on average, discourage employees from using health services, thus saving municipal health care costs, this would have been only one factor before the legislature in balancing what must or cannot be bargained. And, we are obligated to interpret the language the legislature used. As discussed above, to address the presumed incentives referenced by the Commission as if they were exclusive priorities, the legislature would have spoken in different terms. Instead, the ban on bargaining is limited to the "design and selection of" plans in themselves and "the impact of the design and selection of" plans "on the wages, hours, and conditions of employment."[10]

---

[10] We have a similar view about related observations in the Commission decision to the effect that WIS. STAT. § 111.70(4)(mc)6. must be interpreted in light of the fact that municipal employers have in recent years had available an increased number of options to formulate a variety of "high deductible-low premium" or "low deductible-high premium" approaches to providing health care for covered employees.

¶ 45. The County's remaining arguments that do not echo Commission arguments involve the second, "impact" prong of Wis. Stat. § 111.70(4)(mc)6. However, we have explained why we conclude that any such argument is unavailing based on a plain language interpretation of the words used in, and what appears to be the carefully balanced structure of, this new statutory provision.

### *Conclusion*

¶ 46. For these reasons, we affirm the order of the circuit court reversing the declaratory ruling of the Commission.

*By the Court.*—Order affirmed.

---

Again, assuming without deciding that the Commission decision accurately summarized widely understood trends in this area, the Commission did not explain how what it characterizes as "an ever increasing number of plan designs" available to municipal employers sheds light on any particular term used by the legislature in § 111.70(4)(mc)6.