COURT OF APPEALS
DECISION
DATED AND FILED

May 6, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP427**

Cir. Ct. No.  **2019CV21**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

ANDREW DRYJA,

PETITIONER-RESPONDENT,

V.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION AND WISCONSIN DEPARTMENT OF NATURAL RESOURCES,

RESPONDENTS-CO-APPELLANTS.

APPEAL from an order of the circuit court for Oconto County: JAY N. CONLEY, Judge. *Modified and, as modified, affirmed*.

Before Blanchard, Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The Wisconsin Employment Relations Commission and Department of Natural Resources appeal a circuit court order reversing a commission decision that upheld the department's discharge of Andrew Dryja.  The issues relate to whether under the statute applicable to discharge without progressive discipline, the commission correctly affirmed three grounds that the department claimed provided just cause for discharge.  The circuit court concluded that none of the three purported grounds was valid.  We conclude that the department proved one ground, but not the other two.  We modify the circuit court order that reversed the commission and, with those modifications, affirm the court's remand to the commission.

## I.  PROCEDURAL AND LEGAL BACKGROUND

¶2     After a hearing before a hearing examiner, the commission found that Dryja had permanent status in class and was employed as a conservation warden by the department.  It further found that Dryja transported his children in a state vehicle on multiple occasions in violation of state policy, did not report overtime hours he worked, and stored personal items, specifically "a personal boat and stove," at a state facility without permission or authorization.  We will further describe the specifics relating to each of these findings in later sections of this opinion.

¶3     Based on those findings, the commission concluded that the department had just cause to discharge Dryja under WIS. STAT. § 230.34(1)(a)5. and (1)(a)8. (2019-20).[1]  As relevant here, those provisions state that there is just

_____

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

cause to discharge an employee without progressive discipline for "falsifying records of the agency" or "misuse or abuse of agency property."

¶4 This is a judicial review under WIS. STAT. § 227.52. On appeal, we review the decision of the agency, not the circuit court. *Wisconsin Prof'l Police Ass'n v. WERC*, 2013 WI App 145, ¶10, 352 Wis. 2d 218, 841 N.W.2d 839.

¶5 The commission placed the burden on the department to show just cause, and on appeal the parties do not dispute that point. Our standard of review as to the commission's factual findings is set by statute:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

WIS. STAT. § 227.57(6). As to questions of law, the statute provides that we are to "accord no deference to the agency's interpretation of law." Sec. 227.57(11).

## II. THE COMMISSION'S DECISION

¶6 Before we can review the grounds for Dryja's discharge, we face a considerable challenge in discerning the relevant acts that the commission found Dryja to have committed and the precise department rules that these acts allegedly violated. This becomes more clear in the course of our discussion below, but the following is the basic background. The commission decision that we review contains few specifics of Dryja's alleged violations, and sometimes incomplete or unclear references to the pertinent rules. The relevant "findings of fact" part of the "decision and order" is just one sentence stating that Dryja "did not report

overtime hours he worked, transported his children in a State vehicle on multiple occasions in violation of State policy, and stored personal items at a State facility without permission."

¶7    Attached to that decision and order is a "memorandum accompanying decision and order." It states that the department's letter discharging Dryja asserted that he committed misconduct under WIS. STAT. § 230.34(1)(a)5. and (1)(a)8. The memorandum states that, during the investigatory interview that preceded his discharge, Dryja admitted that he committed violations that are then described. But the only specific information added is that the items that he stored on department property were a personal boat and stove. The memorandum then notes that at the administrative hearing Dryja denied the charges, but it concludes that "his prior admissions are found to be credible."

¶8    Taken together, the decision and memorandum do not provide findings as to when Dryja did these things, or how he did them, or how many times, or what policies, if any, were violated. For purposes of judicial review, the decision and memorandum are in some respects incomplete.

¶9    In further attempting to identify Dryja's specific relevant conduct, we note that in the commission's memorandum decision, the only reference to conduct by Dryja is to the conduct that was alleged in the department's letter discharging Dryja. The commission did not refer to any other acts or specific evidence. Therefore, we turn to the discharge letter for more specifics.

¶10    Again, the discharge letter provides some additional information, but not much. We will describe that additional information below, when addressing each of the three grounds for discharge. In addition, the letter makes it clear that

4

the department was relying on Dryja's pre-discharge admissions as the factual basis for its discharge decision.

¶11    To summarize, then, this is the decisional process that we understand to have occurred, and on which we will base our judicial review:  the department interviewed Dryja, and it claims he made certain admissions, which the department relied on as the basis to discharge him in its letter.  The commission then held an evidentiary hearing.  In the commission's decision after that hearing, it focused solely on the violations that were described in the department's discharge letter.  The commission found that the department met its burden of proof by proving that Dryja made pre-discharge admissions.  However, the commission did not refer to or rely on other evidence from the hearing that might have supported the discharge.  In essence, the commission appears to have made its decision based on the same allegations and admissions that were used by the department.

¶12    Therefore, for purposes of judicial review, when we look for substantial evidence to support the commission findings, we confine ourselves to looking for evidence of the acts alleged in the discharge letter, and to which  Dryja was found to have admitted in his pre-discharge interview.

### III.  GROUNDS FOR DISCHARGE

¶13    We turn to the three grounds for Dryja's discharge.  We begin with the ground on which we are affirming the commission's decision.

### A.  Transporting Children In State Vehicle

¶14    The department's discharge letter contended that Dryja admitted that he drove his children in his state vehicle without permission from a supervisor to

do so. The letter asserted that Dryja violated "Policy AD19-A Incidental Use of Qualified Non-Personal Use Vehicles by Conservation Wardens." More specifically, it stated that "in violation of Bureau of Law Enforcement Policy AD19-A, you admitted to transporting your children in your state truck while in work status a couple of times a year the last few years." The letter did not cite any particular part of the policy or explain how it applied to Dryja's conduct.

¶15 The commission found that Dryja transported his children "in violation of State policy" and "when not authorized to do so." The decision did not identify any specific policy or explain how this conduct violated a policy. However, because the commission relied on the discharge letter as the source for the claimed violations, we will assume that the commission found that Dryja violated the policy cited in the discharge letter. The commission then concluded that this conduct qualified as misuse of agency property for purposes of statutory just cause.

¶16 On appeal, as to certain historical facts, Dryja's brief appears to concede that he drove his children in the vehicle without permission of a supervisor. As to the policy, Dryja does not dispute that, as a general matter, it prohibits a warden from providing family members with transportation for non-department related reasons or functions. Instead, Dryja argues that he was allowed to do this, with no supervisory permission required, under an exception in the policy:

> Upon receipt of a documented complaint or call for service, as needed, Conservation Wardens who are the only source of child care at the time of the call may transport their own children in the state vehicle to a location where child care can be provided so the warden can respond to the complaint or call for service.

6

¶17 Dryja's reading of the policy appears to be correct, in the sense that this is an exception that may apply when he is the only caregiver. However, as the commission points out in reply, for that exception to apply, the warden must be responding to a complaint or call for service. The question thus becomes a factual one, that is, whether this exception does not apply because Dryja was not on a complaint or call for service when he transported his children.

¶18 In Dryja's brief, he asserts that he was on complaints or calls, but the commission cites the transcript of his pre-discharge interview. There, Dryja described the above child-care exception, and was then asked how many times his transport of the children was related to an "in-progress," which we interpret to mean a warden's response to a complaint or call for service. He answered that the times he transported the children were related to "having to get somewhere at a certain time, so probably not in-progress." He acknowledged that it was not an emergency and was the result of poor planning. He stated that it "was because I was in a jam-up, and I didn't have another way out." Although this discussion was not phrased using the terms in the policy relating to a "complaint or call for service," Dryja's statements may be reasonably read as admitting that he had transported the children at times when he was not responding to a complaint or call for service.

¶19 The commission found the evidence of Dryja's admission more credible than his testimony at the administrative hearing. Dryja does not develop an argument that the commission could not rely on his admissions. With that credibility finding not disturbed by Dryja's arguments, Dryja's admission that he was not responding to a complaint or call for service establishes that the department proved that the child-care exception did not apply to allow the instances where Dryja transported his children.

¶20    As to whether unauthorized transport of children in the state vehicle is misuse or abuse of agency property, Dryja does not argue that it is not. We conclude that it qualifies as misuse of agency property, and on that basis we affirm the commission's conclusion as to this ground for discharge.

## B. Failure To Report Overtime Hours

¶21    The next ground for discharge was that Dryja failed to report overtime hours. We reverse on this ground because the department did not prove, and the commission did not find, that Dryja's conduct was in violation of a policy that controlled the reporting of hours.

¶22    The discharge letter stated:

> During the investigatory interview on June 15, 2018 you admitted that at various times you have failed to record work hours and miles travelled because you were trying to avoid earning overtime, thereby falsifying your time reports and vehicle reports. On two different occasions you purchased fuel with the state gas card for your state truck but recorded no work hours or miles travelled, and on three other occasions you purchased fuel with the state gas card for your state truck outside of the work hours you claimed that day.

¶23    In its decision the commission found only that Dryja "did not report overtime hours worked." The commission did not describe the specific conduct that it was finding had occurred relevant to this finding. However, because the commission referred to the discharge letter as the source for the claimed violations, we will assume that the commission found that Dryja committed the five instances of purchasing fuel without recording work time associated with that fueling that were described in the letter.

¶24    We regard this to be an issue on which an intermediate step is necessary to establish that the historical facts constitute statutory just cause, here falsification of records.  It is not self-evident that a warden with an assigned state vehicle must claim work time for time spent fueling the vehicle.  The nature of a warden's work suggests that the reporting of hourly time may involve complexities.  And at a categorical level, we are unable to see how the department could prove that any act of non-reporting qualifies as the falsification of a record, other than by showing that reporting was required under a policy, and then proving the historical facts necessary to show that the act of non-reporting violated the policy.

¶25    On appeal, Dryja's brief appears to concede certain historical facts, namely, that he used the state fuel card at times that he did not report hours worked.  Having conceded that point, however, Dryja argues that department policy did not require him to report time associated with fueling as work time.

¶26    In the commission's opening brief, to support the conclusion that Dryja falsified records, it relies in part on an alleged incident in which Dryja failed to report hours spent drafting a warrant.  The brief also refers to Dryja improperly recording miles traveled.  Although these events may have been discussed at the pre-discharge interview or administrative hearing, neither of these allegations was in the discharge letter, and the commission did not make findings about them. Therefore, we disregard these allegations now on judicial review of the commission decision.

¶27    The commission's brief also asserts that Dryja admitted to having not "properly" recorded hours, but it does not explain what policy made recording of fueling time proper or improper.  In the commission's reply brief, it provides

one sentence describing a policy that might have made Dryja's non-reporting of fueling time improper. The commission relies on this testimony from Dryja's supervisor: "In our policy, it basically reads, and don't quote me on this, but—that when you are operating your state squad, you are to claim time for that."

¶28 As thin as it was, that testimony, if it was the only relevant evidence, might be sufficient to establish the content of the policy. However, there is other evidence in the record, already relied on by the commission, that shows that the supervisor's broad statement of a policy requiring the claiming of work time for all time spent operating a department squad car is incorrect.

¶29 In our discussion above about transporting children in the state vehicle, we described the reliance by the department and commission on "Policy AD19-A Incidental Use of Qualified Non-Personal Use Vehicles by Conservation Wardens." That policy is in the record, and it shows that, contrary to the supervisor's testimony of a broad policy, there are indeed circumstances under which wardens are permitted to operate the state vehicle even though they are not reporting work hours.

¶30 In fact, the very purpose of the policy is to clarify how wardens are permitted to use the state vehicle at times when they are not officially working and being paid. This is evident from provisions such as VI.A.3: "While on lunch break, split shift, or at the end of a tour of duty, a Conservation Warden may use their assigned vehicle for travel incidental to official business. During such stops, Conservation Wardens will not record work time."

¶31 The policy further states that examples of travel incidental to official business "include the types of activity that would be expected of a traveler away from home, such as stops at grocery, pharmacy, fitness center, or other locations to

purchase goods or conduct activities necessary for the employee's health and well-being."

¶32    This plainly contradicts the supervisor's testimony that "when you are operating your state squad, you are to claim time for that."  Instead, as just one example, when a warden is on lunch break, the warden is authorized to travel to a grocery and a pharmacy in the state vehicle, but is expressly prohibited from recording work time.

¶33    In the context of the first ground we discussed above (transporting children), the commission implicitly found that this policy exists, and it affirmed a violation of the policy as a ground for discharge.  In light of that finding, we conclude that the supervisor's qualified ("don't quote me on that") and cursory testimony, which conflicts with the written policy, is not substantial evidence.  His testimony does not prove the existence of a policy that wardens are required to report work time whenever they operate a state vehicle.

¶34    Accordingly, because the department failed to prove the existence of a policy requiring Dryja to report work hours associated with times he was fueling the vehicle, we conclude that the finding that he failed to report overtime hours is not supported by substantial evidence.  And, therefore, we reverse the commission's conclusion as to this ground for discharge.

## C.  Storage Of Personal Items On Agency Property

¶35    The third ground for Dryja's discharge was that he stored a wood furnace and boat at the ranger station to which he was assigned without permission.  We reverse on this ground because the department did not prove that

permission was required or that the conduct was otherwise a misuse or abuse of agency property.

¶36 The discharge letter stated: "Additionally, you admitted to storing several large personal items, including a wood furnace and a ten-foot aluminum boat, at your work station without permission." The commission found that Dryja "stored a personal boat and stove at a State facility without authorization." Neither document explained why Dryja would have needed permission or authorization to do this.

¶37 Again, this is an issue on which an intermediate step is necessary to establish that the historical facts constitute statutory just cause, here misuse or abuse of agency property. It is not self-evident that storage of all types of personal property at a ranger station would be misuse or abuse of the ranger station. Instead, the department must prove that this was, in some concrete manner, a misuse or abuse of the ranger station. It could do this by proving that there was a policy in place limiting personal items permitted at a ranger station, and then proving the historical facts necessary to show that Dryja violated the policy. Or, even in the absence of a policy, storage of personal items might be considered a misuse or abuse of agency property if the department shows that the storage negatively affected the agency property in some specific manner.

¶38 Dryja's brief does not dispute that his wood stove and boat were at the ranger station. Instead, he argues that these items were at the station for work-related purposes, and therefore *enhanced* the use of the department's property. He asserts that the wood furnace was there to offset station heating costs, and he kept the boat there in the spring for use in undercover work investigating fishing violations.

¶39     The commission's opening brief relies in part on evidence of other items that Dryja may have stored at the station. Those items are not mentioned in the discharge letter, and the commission finding was limited to the stove and boat. Therefore, we disregard those other items.

¶40     The commission's brief repeatedly describes Dryja as having stored the stove and boat without permission but, like the department and commission decision before it, the brief does not explain why permission was required. In replying to Dryja's argument that the furnace and boat were for work-related purposes, the commission's reply brief states: "[W]ithout permission to keep his personal items at the ranger station in the first instance, whether the items benefited DNR is irrelevant."

¶41     The commission's assertion that work-related purposes are irrelevant is not persuasive. Dryja is arguing that it was not misuse or abuse of the ranger station to have these items there because they served work-related purposes. The commission is attempting to deflect Dryja's argument by asserting that he needed permission, even for that conduct. However, the commission still does not explain why permission was required. In the absence of such an explanation, the department has failed to prove that Dryja violated a policy that required permission for him to have these items at the station. That is true regardless of whether the items were, or were not, being used for work-related purposes, and it only strengthens Dryja's argument that the department fails to rebut his position about benefits to the department.

¶42     Even in the absence of a policy, the department could establish that having these items at the station was misuse or abuse of agency property in some other way, such as by damaging the agency property or interfering with its use.

However, it would be untenable to suggest that the presence of *all* personal items is misuse or abuse of agency property. Personal items such as extra clothing or weather gear, reference books, tools, coffee-making equipment, eating utensils, snacks, and basic toiletries are commonly found in work places and offices of all kinds, and (in the absence of a policy to the contrary) are probably appropriate for a ranger station.

¶43    While the furnace and boat obviously would take up more space than the above items, we have been given no finding or argument that they damaged the ranger station in some manner or were taking up space necessary for some other department purpose.

¶44    Instead, the core of the claim against Dryja, as described in the discharge letter, the commission finding, and the commission brief, is only that he stored these items without permission. Yet, as we have discussed, here the department and commission have not even hinted at a policy that made permission necessary.

¶45    Accordingly, in the absence of an applicable policy or a finding of negative impact on the agency property, the presence of the furnace and the boat cannot be described as misuse or abuse of the ranger station. Therefore, we reverse the commission as to this ground for discharge.

## IV. RESOLUTION

¶46    We turn now to our resolution of this appeal based on the conclusions we have explained above. The parties have not discussed what we should do if we affirm some grounds for discharge but reverse as to others. For guidance, we have looked to what the commission itself would have the authority

to do if it determined that some, but not all, grounds for the department's decision were not established.

¶47 The applicable statute provides that the commission can affirm, modify, or reject the employer action under review. WIS. STAT. § 230.44(4)(c). The statute does not appear to explain the scope of the commission's authority to grant relief in response to a discharged employee's petition where, as here, some, but not all, grounds for discharge are not established. Accordingly, we do not order a remand to the commission with instructions to reach a specific result as to the employer action here. Instead, we direct the circuit court to remand to the commission to allow it to move forward with this case by acting consistently with any law applicable to the commission's authority to order relief for Dryja based on the conclusions we have reached in this opinion. *See* WIS. STAT. § 227.57(5) and (6) (court may remand to agency due to agency error of law or when agency finding not supported by substantial evidence).

¶48 The relief we are granting is somewhat different from that ordered by the circuit court, which reversed as to all three grounds for discharge and remanded to the commission for further action to determine the appropriate discipline for Dryja other than a discharge, and for consideration of his motion for costs under WIS. STAT. ch. 227. However, both the circuit court and this court have reversed the commission order and remanded to the commission. Therefore, as to the circuit court order, we regard this as an affirmance with modification.

## V. CONCLUSION

¶49 For all these reasons, we modify the circuit court order remanding to the commission and affirm it as modified.

*By the Court.*—Order modified and, as modified, affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.